Steve GONZALES by his mother Consuelo Gonzales as his next friend, Angel Flores by his father Alejandro Flores as his next friend, Jerry Rodriguez by his father Tiodoro Rodriguez as his next friend, Wayne Berry by his mother Margaret Smith as his next friend, Jerry Chavez by his father Alfred Chavez as his next friend, Lillian Castellanos by her mother Lucy Castellanos as her next friend, Peggy Garner by her mother Pirlean McCoy as her next friend, Sylvia Allen by her mother Jessie Mae Bryant as her next friend, Ramona Henderson by her mother Mattie Brown as her next friend, Charles Munden by his father Joe R. Munden as his next friend, David Barrington and Mrs. Charlie Becton as his next friend, Individually and on behalf of all others similarly situated, Plaintiffs.

v.

Andy C. McEUEN in his official capacity as Superintendent of Schools, Oxnard Union High School District, Jean Underwood, John Dullam, Bedford Pinkard, Janet Lindgren and Lee Brown in their official capacity as Trustees of the Oxnard Union High School District, Steve Stocks in his official capacity as Assistant Superintendent of Schools, Oxnard Union High School District, Harold Smith in his official capacity as Principal of Oxnard High School, Mike Hernandez in his official capacity as Assistant Principal, Oxnard High School, and Marcheta Cannon in her official capacity as Assistant Principal at Oxnard High School, Defendants.

No. CV 76–3519.

United States District Court,
C. D. California.

March 2, 1977.

462

Richard A. Weinstock, Frederick W. Bray, Garry Gammon, Victor B. Moheno, Legal Aid Association of Ventura County, Oxnard, Cal., for plaintiffs.

Nordman, Cormany, Hair & Compton by Larry L. Hines, Oxnard, Cal., for defendants.

## MEMORANDUM

TAKASUGI, District Judge.

Eleven high school students, by their next friends, have brought this action under the Civil Rights Act, 42 U.S.C. § 1983, and the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States. The case stems from the suspension and expulsion of the named plaintiffs from Oxnard Union High School following a period of student unrest on campus during October 14–15, 1976. The plaintiffs were charged with having committed certain acts which, it was alleged, led to a riot at Oxnard High School.

The complaint was filed on November 11, 1976, seeking damages, declaratory judgment, temporary and permanent injunctive relief against officials of the Oxnard Union High School District (hereinafter referred to as "District"), including the Board of Trustees (hereinafter referred to as "Board") and the Superintendent of the District.

On November 12, 1976, this Court entered a Temporary Restraining Order directing the Superintendent and the District to reinstate nine students, the original named plaintiffs, and to permit them to make up work they had missed during their involuntary suspension, pending a hearing on their proposed expulsion before the Board. Two of the plaintiffs now before the court, David Barrington and Charles Munden, were not named as plaintiffs in the original complaint and, thus, the restraining order was not made applicable to them. As to the other plaintiffs, it was the opinion of this Court that the notices given to the

plaintiffs and their parents concerning the expulsion proceedings were constitutionally inadequate and denied the plaintiffs due process of law as suggested by the United States Supreme Court in *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975).

Subsequently, corrected notices were sent by the District to each of the plaintiffs except Barrington and Munden, specifying the charges against each plaintiff and also setting forth the rights of the plaintiffs as required by § 10608(d) of the California Education Code. Hearings were conducted by the Board of Trustees during the latter part of November and early December. Because the charges against some of the plaintiffs grew out of the same incidents, hearings were consolidated for some plaintiffs. Individual hearings were set for the other plaintiffs. The Board sustained the charges against all the students and found that there was just cause for expulsion. The students were expelled for the remainder of the 1976–1977 school year.

Pursuant to California Education Code § 10609, plaintiffs have the right to appeal their expulsions to the Ventura County Board of Education, and they have declared their intention to pursue such appeals. However, plaintiffs contend that their expulsions were violative of due process and they seek a preliminary injunction directing their reinstatement at Oxnard High school pending trial or, alternatively, pending hearing and determination by the Ventura County Board of Education.

## COMMON ISSUES

*California Education Code Section 10605*

■ Plaintiffs contend that their rights to due process have been violated by the defendants' failure to attempt milder measures of correction before imposing the harsher penalty of expulsion. California Education Code, § 10605, reads as follows:

> "The governing Board of any school district shall suspend or expel pupils for misconduct when other means of correction fail to bring about proper conduct."

Plaintiffs' interpretation of § 10605 is that the exercise of the power of expulsion or suspension is expressly limited to cases where other means to correct misconduct have failed; an attempt at milder measures of correction is a condition precedent to expulsion. Defendants, on the other hand, point to numerous other sections of the Education Code which unequivocably authorize expulsions and suspensions, and contain no reference to other corrective and less harsh action.[1] The defendants offer extreme illustrations to demonstrate the error of plaintiffs' reasoning. The defendants interpret § 10605 as *requiring* expulsion when other means have failed.

The court need not, and does not, reach this issue of statutory interpretation. Plaintiffs' theory is that the failure to follow the quoted provisions of § 10605 of the California Education Code constitutes a violation of due process. The court disagrees. Not every violation of state statute or a school board's procedural requirement is a denial of due process. *Winnick v. Manning*, 460 F.2d 545 (2d Cir. 1970). The defendants' failure to follow the procedure suggested by the plaintiffs would be a violation of state law only. Plaintiffs are not thereby deprived of any federal right. Title 42, U.S.C. § 1983 is not concerned with violations of state law unless such violations result in an infringement of a federally protected right. *Screws v. United States*, 325 U.S. 91, 108, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945); *Sigler v. Lowrie*, 404 F.2d 659, 662 (8th Cir. 1968), *cert. den.*, 395 U.S. 940, 89 S.Ct. 2010, 23 L.Ed.2d 456 (1969); *Boyer v. State of Wisconsin*, 345 F.Supp. 564, 566 (D.C.1972).

*Impartiality of the Board*

Plaintiffs' strongest and most serious challenge is to the impartiality of the Board. They contend that they were denied their right to an impartial hearing before an independent fact-finder. The basis for this claim is, first, overfamiliarity of the Board with the case; second, the multi-

---

1. California Education Code § 10601 *et seq.*

ple role played by defendants' counsel; and, third, the involvement of the Superintendent of the District, Mr. McEuen, with the Board of Trustees during the hearings.

■ No one doubts that a student charged with misconduct has a right to an impartial tribunal, see *Wasson v. Trowbridge*, 382 F.2d 807, 813 (2d Cir. 1967); *Esteban v. Central Missouri State College*, 277 F.Supp. 649, 651 (D.C.W.D.Mo.1967). There is doubt, however, as to what this means. Various situations have been identified in which experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable. Bias is presumed to exist, for example, in cases in which the adjudicator has a pecuniary interest in the outcome; *Gibson v. Berryhill*, 411 U.S. 564 at 579, 93 S.Ct. 1689, 36 L.Ed.2d 488; *Ward v. Village of Monroeville*, 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972), or in which he has been the target of personal attack or criticism from the person before him. *Taylor v. Hayes*, 418 U.S. 488, 501–502, 94 S.Ct. 2697, 41 L.Ed.2d 897 (1974). The decisionmaker may also have such prior involvement with the case so as to acquire a disqualifying bias. *Wasson v. Trowbridge, supra.* The question before the Court is not whether the Board was actually biased, but whether, under the circumstances, there existed probability that the decisionmaker would be tempted to decide the issues with partiality to one party or the other. It is with this view that the plaintiffs' claims must be considered.

*Overfamiliarity*

■ Much has been made of "The Red Book" which, it is claimed, contained information about the academic and disciplinary records of plaintiffs. It is alleged that the Board had access to this material from twenty to thirty days before the expulsion hearings. Depositions submitted to the court show that the members of the Board met with school officials prior to the hearings. Plaintiffs contend that this prior in-

volvement by the Board deprived plaintiffs of the opportunity for a fair hearing. The court rejects this contention. Exposure to evidence presented in a nonadversary investigative procedure is insufficient in itself to impugn the fairness of the Board members at a later adversary hearing. *Withrow v. Larkin*, 421 U.S. 35, 47, 95 S.Ct. 1456, 45 L.Ed.2d 712 (1975). Nor is a limited combination of investigatory and adjudicatory functions in an administrative body necessarily unfair, absent a showing of other circumstances such as malice or personal interest in the outcome. *Withrow, supra*, at 47, 95 S.Ct. 1456; *Jones v. Board of Educ.*, 279 F.Supp. 190, 200 (D.C., 1968). A school board would be amiss in its duties if it did not make some inquiry to know what was going on in the district for which it is responsible. Some familiarity with the facts of the case gained by an agency in the performance of its statutory role does not disqualify a decisionmaker. *Hortonville Dist. v. Hortonville Ed. Assoc.*, 426 U.S. 482, 491, 96 S.Ct. 2308, 2314, 49 L.Ed.2d 1, 9 (1976).

*Multiple Roles Of Counsel*

■ Turning now to the issue of the multiple roles performed by defendants' counsel, the court notes that the Board members are defendants in this pending related action and may thereby become subject to personal liability.

It is undisputed that attorneys for the District who prosecuted the charges against the plaintiffs in the expulsion proceedings, also represent the Board members in this action. Plaintiffs claim that the attorneys acted in dual roles at the expulsion hearings: as prosecutors for the Administration and as legal advisors to the Board. Counsel for defendants admit that they advised the Board prior to the hearings with respect to its obligations regarding these expulsions, but they deny that they advised the Board during the proceedings themselves.

A reading of the transcripts reveals how difficult it was to separate the two roles.[2]

---

2. The following is one example taken from the transcript of the Flores-Chavez-Rodriguez hearing:

"[Counsel for student]: Mr. Chairman, will we be allowed to cross-examine opposing counsel's witnesses prior to the board's putting

Special mention should be made of the fact that the Board enjoys no legal expertise and must rely heavily upon its counsel. This places defendants' attorneys in a position of intolerable prominence and influence.[3]

It is the opinion of this court that the confidential relationship between the attorneys for the District and the members of the Board, reinforced by the advisory role played by the attorneys for the Board, created an unacceptable risk of bias. Bearing in mind also that the Board members are subject to personal liability in this action, the court concludes that bias can be presumed to exist.

*Involvement of Superintendent McEuen*

Superintendent McEuen sat with the Board members during the expulsion hearings; he acted as Secretary to the Board on at least one occasion. By statute, Mr. McEuen is the chief advisor to the Board.[4] The fact remains, however, that he is also the chief of the "prosecution" team, to wit, the District.

It is clear from the record that at least on one occasion, at the joint hearing of plaintiffs, Flores, Chavez and Rodriguez, Superintendent McEuen was present with the Board for approximately forty-five minutes during its deliberations on the issue of expelling these plaintiffs. The plaintiffs contend that their due process rights were violated by this involvement of Mr. McEuen with the Board. This court agrees.

Defendants' counsel maintain that Mr. McEuen did not participate in the deliberations and did no more, perhaps, than serve cookies and coffee to the Board members. Whether he did or did not participate, his presence to some extent might operate as an inhibiting restraint upon the freedom of action and expression of the Board. Defendants argue that there is no evidence that Mr. McEuen influenced or biased the Board. Proof of subjective reasoning processes are incapable of corroboration or disproval. Plaintiffs should not be forced to rely upon the memory or sense of fairness of Superintendent McEuen or the Board as to what occurred there. Perhaps Mr. McEuen's physical presence in deliberation becomes more offensive because of the pre-hearing comments which showed something less than impartiality.[5]

The court concludes that the process utilized by the Board was fundamentally unfair. This raises a presumption of bias. In view of the alternatives for the selection of an impartial hearing body under California Education Code Section 10608,[6] it would

---

questions, or after? How do you wish to do that?"

"[Counsel for District]: Mr. Chairman, if I may comment, it is permissible, although unusual, for an attorney to call an adverse witness, which I have done with Mr. Chavez, so I would suggest that in the event I do so for other witnesses and for Mr. Chavez, that opposing counsel be given the opportunity to question that witness before the board asks questions, although it is the board's prerogative to ask questions at any point in time, even at the risk of interrupting counsel." Vol. I, p. 41, 11. 10–17.

3. This is illustrated by the anomalous situation in which the prosecuting attorneys offered a continuance to the defense, a function within the exclusive province of the Board. Flores-Chavez-Rodriguez Transcript, Vol. I, pp. 157–158.

4. California Education Code § 939.

5. A clipping of the news story was submitted among Plaintiffs' exhibits. Defendants have not denied the accuracy of the Superintendent's comments.

6. Specifically, California Education Code § 10608(d) provides in part:

"In lieu of conducting an expulsion hearing itself, the governing board of any school district may contract with the county hearing officer or with the Office of Administrative Hearings of the State of California pursuant to Chapter 14 (commencing at Section 27720), Part 3, Division 2, Title 3 of the Government Code and Section 1016.9 of the Education Code, for a hearing officer to conduct such hearing or the governing board may appoint an impartial administrative panel of three or more certificated employees of the district, none of whom shall be on the staff of the school in which the pupil is enrolled. In lieu of the appointment of district employees exclusively, the district may request the services of one or more certificated persons not employed by the district."

have been more reasonable to provide procedures that insured not only that justice was done, but also that it appeared to have been done.

In the ordinary case, the scope of judicial review of an administrative board's determination is limited to the question whether there is substantial evidence in the record to support the Board's findings. Cal.Educ. Code § 10608; see *Toohey v. Nitze,* 429 F.2d 1332, 1334 (9th Cir. 1970); *Carr v. United States,* 337 F.Supp. 1172 (D.C.N.D.Cal.1972). However, in light of this court's holding that there was a presumption of bias in this hearing, plaintiffs are entitled to this court's review of the evidence under the standard of "clear and convincing" proof.

### DISCUSSION OF INDIVIDUAL STUDENTS

*David Barrington and Charles Munden*

*Notice*

Plaintiffs Barrington and Munden were expelled at a meeting of the Board on November 10, 1976. Neither Barrington nor Munden was present; neither was represented by either parent or counsel.

■ On October 29, 1976, letters had been sent to the parents advising them that the principal was recommending expulsion of the students. The letters contained a specific statement of the charges: in the case of Barrington, that he was involved in a riot at school at which time he had threatened physical violence against a teacher; in the case of Munden, that he was involved in a fight with another student, Wayne Berry. The letters contained no notice to the student or parent of the student's right to be present at the hearing, to be represented by counsel, and to present evidence. This was a clear violation of § 10608 of the California Education Code. The letters to the parents stated, "If you feel that the school does not have just cause for this recommendation, you may want to attend this meeting to present your reasons why [the students] should not be expelled."

Attorneys for Munden and Barrington, on November 19 and 20, respectively, requested that the Board set aside their expulsions on account of alleged inadequacy of the notices given to the plaintiffs. They asked for new hearings at which the plaintiffs could be present to defend themselves. The Board declined to set aside these expulsions or to admit that the notices sent to these plaintiffs were constitutionally defective. The defendants maintain that the notices sent to Barrington and Munden complied, at least, with *federal* due process which, it is urged, requires only a hearing and notice of the charges. They contend that since a hearing was held and there was notice to the parents of the charges against the student, the requisites of procedural due process were satisfied. The court disagrees.

The precise question concerning the content of the notice to be given in expulsion proceedings will depend on the nature of the proceeding that is required.

■ It is now beyond argument that due process protections apply to expulsion of students by public educational institutions. The prerogative of the educational institution to regulate student conduct, though concededly broad, must be exercised consistently with constitutional safeguards. *Goss v. Lopez, supra.* The question here is common to almost every case in which it is claimed due process has been violated: "Once it is determined that due process applies, the question remains what process is due?" *Goss, supra,* 419 U.S. at 577, 95 S.Ct. at 738; *Morrissey v. Brewer,* 408 U.S. 471 at 481, 92 S.Ct. 2593, 33 L.Ed.2d 484.

The requirements of due process are flexible and different cases may require different procedural safeguards. If the possible penalties are mild, quite informal procedures may be sufficient. More formal proceedings may be required where severe penalties may attach. See *Goss v. Lopez, supra.* Where the cutoff is between a "severe" and a "mild" penalty is not clear; what *is* clear is that expulsion is by far the most severe.

The Supreme Court in *Goss, supra,* held that in suspensions of ten days or less due

process requires at a minimum that a student be given notice and an opportunity to be heard. The court expressly refrained from construing due process to require, in short suspension situations, an opportunity to secure counsel, to confront and cross-examine witnesses, or to call witnesses. However, the court made clear that it was addressing itself solely to the short suspension, not exceeding ten days. It recognized that longer suspensions or expulsions may require more formal procedures.

*Goss* clearly anticipates that where the student is faced with the severe penalty of expulsion he shall have the right to be represented by and through counsel, to present evidence on his own behalf, and to confront and cross-examine adverse witnesses.

Other courts have held that a hearing incorporating these safeguards must be held before or shortly after a child is suspended for a prolonged or indefinite period. *Black Coalition v. Portland School District No. 1*, 484 F.2d 1040, 1045 (9th Cir. 1973); *Esteban v. Central Missouri State College*, 277 F.Supp. 649 (W.D.Mo.1967). This court agrees.

█ Notice to be adequate must communicate to the recipient the nature of the proceeding. In an expulsion hearing, the notice given to the student must include a statement not only of the specific charge, but also the basic rights to be afforded the student: to be represented by counsel, to present evidence, and to confront and cross-examine adverse witnesses. Section 10608 of the California Education Code provides, *inter alia,* for notice to the student and the parent of the specific charge, of the right to be represented by counsel, and of the right to present evidence. Federal due process requires no less.

Defendants next argue that even if the notice was defective, the court must still determine whether the plaintiffs were given a fair and impartial hearing. Defendants misapprehend the meaning of notice. It is not "fair" if the student does not know, and is not told, that he has certain rights which he may exercise at the hearing.

The court, in any event, has held that there was a presumption of bias and that plaintiffs did not have a fair and impartial hearing. In the case of plaintiffs Munden and Barrington, the unfairness inherent in the duel roles is readily apparent. Mr. Hines acted as the legal advisor to the Board during the Munden-Barrington hearing on November 10. When the request was made for new, properly noticed hearings for these two students, counsel, who advised the Board in the first proceeding, urged the Board to refuse.

The court holds that the notice given to plaintiffs Barrington and Munden was defective in that it did not adequately inform them of their constitutional rights. It follows that their expulsions were improper.

### Angel Flores, Jerry Chavez and Jerry Rodriguez

The combined hearing of plaintiffs Rodriguez, Flores and Chavez was held on November 20, December 1, and 2. All charges against these three students were sustained. They were expelled for the balance of the 1976–77 school year. The expulsion of Jerry Rodriguez was stayed for the spring semester on the condition that he attend Frontier High School on a probationary basis.

These three students were involved in a fracas on October 14, 1976, with two white, adult males who climbed over a fence to enter the school yard. The evidence was that the two trespassers appeared to be intoxicated and that one of them had a large flashlight which he waved around. The intruders confronted several Chicano students who were eating lunch. Eventually, words led to fisticuffs. The three students were charged with battery of Keysworth, one of the trespassers.

### Angel Flores

It is undisputed that Angel Flores struck Keysworth and struck the first blow. However, Flores, from the inception of the investigation by school officials, had consist-

ently claimed that he acted in self defense. The testimony of all the witnesses who testified to seeing the initial confrontation was that the trespasser, Keysworth, moved as if to strike Flores. Flores did not wait for the blow to fall but struck first in self defense. The District produced no evidence to rebut the claim of self defense. Mr. Boyce, a teacher at Oxnard High School, testified that Flores told him that he struck the first blow. There was no elaboration. Mr. Boyce saw Keysworth on the ground being kicked and cuffed by several students, but he could not identify any of them. There is no evidence that Flores struck Keysworth more than once, or that he kicked Keysworth at any time.

### Jerry Chavez

Chavez was charged with battery of Keysworth and a fellow student, Craig Smith. There was eyewitness testimony of teachers who saw Chavez strike Smith and kick him while he was on the ground. No one testified to seeing Chavez strike Keysworth. Chavez, however, admitted that he struck and kicked Keysworth as Keysworth stumbled from Flores' blow. He admitted striking Craig Smith and kicking him while he was on the ground. But Chavez claimed self defense and defense of another.

### Jerry Rodriguez

Rodriquez was originally charged with battery of Craig Smith, but the charge was orally amended to charge battery of Keysworth when no evidence was introduced to show that he ever laid a finger on Smith. Rodriguez testified that Keysworth was stumbling from Flores' blow; Chavez then struck Keysworth and, as Keysworth stumbled from Chavez' blow, Rodriguez struck and pushed him away. Rodriguez claimed self defense and expressed fear that Keysworth would have fallen upon him, knocking him to the ground.

■ Viewing this evidence as a whole, this court finds that there is absent clear and convincing evidence that Angel Flores did not act in self defense. The disputed issue is critical and it is possible that a

reasonable Board could find that Flores did act in self defense. However, the court finds that the actions of Jerry Chavez and Jerry Rodriguez were unjustified. Neither was in danger of harm from Keysworth, and it was unreasonable for either of them to have believed that he was in danger. While Rodriguez may have been justified in pushing Keysworth away, he was not entitled to strike the man. Since any responsible Board would find Chavez and Rodriguez culpable on the charges brought against them, the court concludes that they were not prejudiced by any bias of the Board—at least as to the guilt phase.

### Failure to Produce Percipient Witnesses

■ Plaintiffs contend that the defendants' failure to produce Smith and Keysworth as witnesses at the hearing effectively deprived them of due process in that plaintiffs were unable to confront and cross-examine these witnesses.

It is questionable whether the hearsay statement of Smith was properly admissible since Chavez was unable to confront and cross-examine one of his accusers whose statements were being used against him. See *Fielder v. Board of Education of Winnebago, Neb.,* 346 F.Supp. 722 (D.C.Neb. 1972). But it is difficult to see how Chavez was prejudiced in this case. Chavez, by his own admission, travelled over 20 to 21 feet to join the fray. This, together with the eyewitness testimony of teachers who saw Chavez striking Smith is more than sufficient to support the charge against him.

As to the trespasser, Keysworth, the court does not believe that the prosecution was obligated to call any witnesses. Even in criminal cases, a defendant has no right to confront a "witness" who provides no evidence at trial. Nor, is the government required to call all of the witnesses to a crime. *United States v. Heck,* 499 F.2d 778 (9th Cir. 1974). The failure of the District to call essential witnesses may, however, have a direct bearing on whether it can sustain its burden of proof based upon competent, credible evidence.

## Amendment of Charges Against Rodriguez

■ It is clear that the District failed to prove the charge that Rodriguez had committed a battery upon Craig Smith. The charge was amended only after the District rested its case and had failed to prove the original charge. It is equally clear that a basic requirement of due process in a disciplinary proceeding is notice of the specific charge and adequate opportunity to present a defense. See *Dixon v. Alabama,* 294 F.2d 150, 158 (5th Cir. 1961), cert. den., 368 U.S. 930, 82 S.Ct. 368, 7 L.Ed.2d 193 (1961); *Wasson v. Trowbridge,* 382 F.2d 807, 812 (2d Cir. 1967). This court rejects the defendant's preposterous suggestion that Rodriguez had any obligation to point out any error or discrepancy before the District rested its case. It is not the student's obligation to wrest due process from the defendants, but rather, it is the defendants' obligation to provide it. See *Fielder v. Board of Education, supra.* Examination of the record, however, reveals that Rodriguez had an opportunity for continuance or new hearing on the amended charge, but chose to proceed. The court concludes, therefore, that the defect was waived by plaintiff Rodriguez.

## Wayne Berry and Steve Gonzales

On October 15, 1976, Mr. Morimune, a teacher, saw a group of students running around. About ten students were chasing three others. Two of the three jumped over the fence. The third was making a valiant attempt, but, as Mr.Morimune put it, "There was about four gentlemen holding onto him." As Mr. Morimune drew near, he heard a cry for help. Sizing up the situation, he determined that the four were not really serious. Nevertheless, he threw himself upon the four, knocked them to the ground and, as everyone came up for air, Mr. Morimune grabbed two by the hair. These two were Steve Gonzales and Charles Munden. The young man, free at last, escaped over the fence. He was Wayne Berry. Charles Munden was taken to the principal's office so that he could give an account of himself. The interview was taped and a typed transcript was prepared.

Gonzales was charged with beating Berry. Berry was charged with throwing an object at Munden, striking him on the leg.

## Wayne Berry

■ The alleged victim, Munden, refused to testify for either the District or the students. Assistant Principal Hernandez testified that Munden had picked out Berry from about 800 photographs as the person who had thrown an object at him. Defendants claim that this hearsay is admissible as a spontaneous statement and admissible under California Evidence Code § 1240. Defendants further contended that since Munden was "unavailable" his taped statements implicating Berry and Gonzales are admissible as a declaration against interest. The Court rejects these arguments. The requisite element of spontaneity, which assures reliability, is clearly lacking. The rationale for permitting hearsay exceptions is that the declarant has no motive for falsifying. Here, Munden obviously does have such motive. Further, if the declaration against interest exception to the hearsay rule is advanced, only declarations against Munden's interests would be admissible.

■ The strongest reason, of course, for not permitting these hearsay statements is that the accused student is deprived of his constitutional right to confront and cross-examine his accuser. Although strict adherence to common law rules of evidence is not required in school disciplinary proceedings, where the student is faced with the severe sanction of expulsion, due process does not permit admission of *ex parte* evidence given by witnesses not under oath, and not subject to examination by the accused student.

The Board's own rules provide that hearsay cannot be the sole basis for decision. Absent Munden's hearsay statements implicating Wayne Berry, there is scant evidence that Wayne Berry was responsible for any wrongdoing. Berry admitted that he threw an object, which the evidence seems to show was a plexi-glass tack handle eight inches long and one-quarter pound in weight.

Berry's statement that he threw an object in the manner in which he did was not an admission that he did not act in self defense; it was not an admission that the striking of another person was anything but accidental. The testimony of teachers and administrators of Oxnard High School indicates that the atmosphere was charged and highly explosive. There is no clear evidence that shows that Berry was not caught up in a situation, not of his making, over which he had no control.

### Steve Gonzales

 The expulsion of Steve Gonzales holds many of the same infirmities as Berry's. Vice-principal Hernandez testified again with respect to the hearsay statements of Berry and Munden, implicating Gonzales. For the reasons stated above, the court holds that admission of these hearsay statements without opportunity to cross-examine the declarant, in student expulsion proceedings, deprived the accused student of his rights of confrontation.

The most that can be said, reviewing the record, is that Gonzales was present at the scene. Mr. Morimune testified that one student held a leg, another was on the other side punching. While Mr. Morimune at first stated that all four were holding on to Berry and, subsequently, that three were punching and kicking while one held Berry's leg, he admitted finally that he did not actually see the other two grappling with Berry on the fence. He stated that there was "a lot of motion." Moreover, Mr. Morimune was unable to identify which of the students actually held, kicked and punched Berry. There was no competent evidence identifying Gonzales as one of the culprits. The court finds that the charges against Gonzales are not supported by clear and convincing evidence.

### Failure to Testify

 At the hearing, on the advice of counsel, both Berry and Gonzales declined to testify.

Counsel for defendants argued that the plaintiffs' failure to take the stand without specific assertion of Fifth Amendment privileges constituted a waiver of the privilege against self-incrimination. They further argued that inasmuch as plaintiffs declined to testify, it can be assumed that their nonexistent testimony would have supported the charges against them. Therefore, defendants claim that plaintiffs' refusal to testify is equivalent to a confession and the prosecutor is free to comment thereon.

This argument does not take into account the basic reasons for the existence of the rights accorded under the Fifth Amendment.

In the landmark case of *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), Mr. Justice Douglas recited the reasons for the protections of the Fifth Amendment:

"The question remains whether, statute or not, the comment rule, approved by California, violates the Fifth Amendment.

"We think it does. It is in substance a rule of evidence that allows the state the privilege of tendering to the jury for its consideration the failure of the accused to testify. No formal offer of proof is made as in other situations; but the prosecutor's comment and the court's acquiescence are the equivalent of an offer of evidence and its acceptance. The Court in the Wilson case stated:

" ' . . . the act was framed with a due regard also to those who might prefer to rely upon the presumption of innocence which the law gives to every one, and not wish to be witnesses. It is not every one who can safely venture on the witness stand, though entirely innocent of the charge against him. Excessive timidity, nervousness when facing others and attempting to explain transactions of a suspicious character, and offenses charged against him, will often confuse and embarrass him to such a degree as to increase rather than remove prejudices against him. It is not every one, however honest, who would therefore, willingly be placed on the witness stand. The statute,

in tenderness to the weakness of those who from the causes mentioned might refuse to ask to be witnesses, particularly when they may have been in some degree compromised by their association with others, declares that the failure of defendant in a criminal action to request to be a witness shall not create any presumption against him.' [*Wilson v. United States*] 149 U.S., [60] p. 66, [13 S.Ct. 765, 766, 37 L.Ed. 650].

"If the words 'Fifth Amendment' are substituted for 'act' and for 'statute', the spirit of the Self-Incrimination Clause is reflected. For comment on the refusal to testify is a remnant of the 'inquisitorial system of criminal justice.' *Murphy v. Waterfront Comm'n*, 378 U.S. 52, 55, 84 S.Ct. 1594, 1596, 12 L.Ed.2d 678, which the Fifth Amendment outlaws." 380 U.S. at 613–614, 85 S.Ct. at 1232.

In *Griffin*, the court held that comment upon the failure of a criminal defendant to take the stand, under California statute permitting such comment and an inference of guilt, violated the Fifth Amendment. This court holds, as did the District Court in *Caldwell v. Cannady*, 340 F.Supp. 835 (N.D. Tex., 1972):

". . . one cannot be denied his Fifth Amendment right to remain silent merely because he is a student. Further, his silence shall under no circumstances be used against him as an admission of guilt." *Id.*, at 841.

Defendants cite the case of *Boulware v. Battaglia*, 344 F.Supp. 889, (D.C.Del., 1972) for the proposition that "[t]he consideration of an individual's refusal to participate in . . . [administrative] hearings such as these does not constitute an impermissible burden upon the exercise of one's Fifth Amendment rights." *Id.* at 906. *Boulware* involved disciplinary proceedings against police officers. A student's refusal to testify in a school disciplinary proceeding is "highly distinguishable from the duty placed upon a policeman to explain his own conduct at a disciplinary hearing . . . .. A policeman is a representative of a body charged with law enforcement whose conduct must be absolutely above reproach. He is in a position of trust which he has voluntarily chosen to assume and in which he is under no pressure to remain. The considerations of age must also be weighed with greater protections being afforded children due to their youth." *Caldwell, supra*, at 841.

There is no question that a high school student who is punished by expulsion might well suffer more injury than one convicted of a criminal offense. The court holds that comment by counsel on the students' refusal to testify, and arguments that guilt could be inferred from such refusal was a violation of the students' Fifth Amendment rights.

*Lillian Castellanos*

The charge was that Lillian Castellanos battered another female student and a male teacher on October 15, 1976. At the hearing, there was testimony by the student-victim and teachers concerning the attack. Two teachers testified that Castellanos kicked a male teacher "in the *gluteous maximus*." The court can find no defense and concludes that the District did sustain its burden of proof.

*Sylvia Allen*

Sylvia Allen was charged with battery of another student. Both Sylvia and the alleged victim testified at the hearing. Although there were conflicting stories about the incident, the court finds that upon the plaintiff's own version, her conduct was not justified since she was in no danger of harm from the victim.

*Romona Henderson*

Plaintiff, by her own testimony, basically admitted the charge brought against her by the Board. This appears to have been aberrant behavior on her part. While there may have been mitigating circumstances, the court is unable to grant equitable relief.

SUMMARY

Preliminary injunction seeking reinstatement of plaintiffs Chavez, Rodriguez, Allen,

**472**

Castellanos, and Henderson is hereby denied.

The Board's decision for expulsion of plaintiffs Barrington, Munden, Flores, Berry and Gonzales is hereby set aside. Defendants are ordered to reinstate said plaintiffs and provide special or remedial measures to permit plaintiffs to make up work missed by reason of the involuntary expulsion. This order of reinstatement shall become effective forthwith and shall continue until one of the following occurs:

1. Final decision following a hearing before an impartial body pursuant to § 10608(d), Cal.Educ.Code; or

2. Final decision by the Ventura County Board of Education on the appeals filed by plaintiffs with said Board.

Plaintiffs' counsel is ordered to prepare and file proposed Findings of Fact, Conclusions of Law, and an Order consistent with this Memorandum.