Danny WHITESIDE, by his parent Robbie Henry Johnson

v.

Billy F. KAY, Individually and in his capacity as Superintendent of West Carroll Parish School System, Gene A. Stephens, Individually and in his capacity as Principal of Kilbourne High School, W. L. Gwinn, in his capacity as President of the West Carroll Parish School Board, Alfred Rawls, in his capacity as Vice President of the West Carroll Parish School Board, Rufus Rooss, in his capacity as a member of the West Carroll Parish School Board, Cecil Stanford, in his capacity as a member of the West Carroll Parish School Board, Bobby Kovac, in his capacity as a member of the West Carroll Parish School Board and Lucian T. Smith, in his capacity as a member of the West Carroll Parish School Board.

Civ. A. No. 78–0271.

United States District Court, W. D. Louisiana, Monroe Division.

March 17, 1978.

---

Catherine L. La Fleur and David Duhon, North Louisiana Legal Assistance Corporation, Bastrop, La., for plaintiff.

Dist. Atty. Donald K. Carroll, Fifth Judicial District, Oak Grove, La., Asst. Dist. Atty. Thomas E. Cooper, Jr., Fifth Judicial District, Rayville, La., for defendant.

## MEMORANDUM RULING

STAGG, District Judge.

Danny Whiteside, through his mother Robbie Henry Johnson, brought this action

under 42 U.S.C. § 1983 to redress alleged violations of his right to procedural due process by the Superintendent of West Carroll Parish schools and the West Carroll Parish School Board in suspending Mr. Whiteside from Kilbourne High School for the remainder of the 1977–78 school year. The case came on for hearing on March 13, 1978, on the plaintiff's motion for a preliminary injunction ordering defendants to reinstate him to school for the remainder of the school year. At the close of the evidence, the Court DENIED the preliminary injunction and informed the parties that it would render a written decision within a week.

## FINDINGS OF FACT

On January 12, 1978, Gene A. Stephens, principal of Kilbourne High School, suspended Mr. Whiteside for five days, to return when given permission by the School Board, for becoming involved in an altercation with a coach. Mr. Stephens sent Mr. Whiteside home with a note explaining the suspension and the reasons for it. Prior to suspending Mr. Whiteside, Mr. Stephens had talked to the coach and had called Mr. Whiteside to his office to discuss the problem. He told Mr. Whiteside what the coach had said and gave Mr. Whiteside a chance to explain his side of the story.

Mrs. Johnson, Mr. Whiteside's mother, was not given the opportunity to appeal the suspension. On January 13, 1978, Mr. Stephens sent James Whiteside, the plaintiff's nephew, home with a copy of a letter from Mr. Stephens to Superintendent Billy F. Kay requesting that Mr. Whiteside be expelled from school for the remainder of the school year.

At the request of Mrs. Johnson, Superintendent Kay set up a hearing before the parish disciplinary committee. He had designated the committee to hear expulsion matters and recommend action to him. At the hearing on January 24, 1978, the committee members excluded all persons but themselves, the school principal, Mr. Whiteside and Mrs. Johnson. Superintendent Kay was not present. The chairman of the committee read the charges against Mr. Whiteside, then Mr. Stephens read written statements by a coach and a teacher concerning the incident. Mr. Whiteside then testified, telling his version of the incident, and he answered questions of the committee members. The committee then asked Mrs. Johnson if there would be anything else presented on Mr. Whiteside's behalf, and she told the committee there would be nothing further.

Mr. Whiteside had brought two witnesses with him, but they did not testify. The committee neither denied them an opportunity to testify nor invited them to testify. Although the teacher and the coach were in the school building at the time of the hearing, they did not testify in person.

Shortly after the hearing, the committee voted to uphold the recommendation of the principal. The superintendent reviewed the committee's findings and the minutes of the hearing and expelled Mr. Whiteside for the remainder of the year. He informed Mrs. Johnson that she could appeal his decision to the School Board. Mrs. Johnson decided to appeal, so Superintendent Kay placed the matter on the agenda for the February 7, 1978 meeting of the School Board.

At the School Board meeting, Mr. Whiteside was represented by counsel. She had Mr. Whiteside explain his story a third time, and the Board reviewed the findings of the committee and Superintendent Kay. The School Board affirmed the decision of the lower authorities.

Rather than take an appeal to the state district court, as provided by the state statute, Mr. Whiteside chose to file this action for injunctive relief in federal court.

## DISCUSSION

In asserting his right to a preliminary injunction, Mr. Whiteside claims that the state statutory proceeding is unconstitutional because it does not give him a right to compulsory process of witnesses, a right of confrontation and cross-examination of the witnesses against him, a right to the list of witnesses against him and a summary of their testimony, and a right to examine in

advance written documents to be used against him. To be entitled to the preliminary injunction, he must show:

"(1) [A] substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) that granting the preliminary injunction will not disserve the public interest." *Canal Authority of State of Florida v. Callaway,* 489 F.2d 567, 572 (5th Cir. 1974).

■ When state law creates a right to public education, that right becomes protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). Louisiana law creates a right to a public education. La.R.S. 17:1, *et seq.* The suspension or expulsion of a child deprives the child of property and liberty rights, as it may limit later opportunities for the child; thus, such disciplinary action must be. attended by due process safeguards. *Goss v. Lopez, supra.*

■ A state or governmental body violates due process of law when it fails to follow the procedural steps it has adopted for proceedings held before it. *United States ex rel. Accardi v. Shaughnessy,* 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954); *Antonuk v. United States,* 445 F.2d 592 (6th Cir. 1971); *Government of Canal Zone v. Brooks,* 427 F.2d 346 (5th Cir. 1970). *See Yellin v. United States,* 374 U.S. 109, 83 S.Ct. 1828, 10 L.Ed.2d 778 (1963); *Vitarelli v. Seaton,* 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959); *Service v. Dulles,* 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957).

Louisiana law establishes standards for the conduct of students in the public schools:

"Every teacher is authorized to hold every pupil to a strict accountability for any disorderly conduct in school or on the playgrounds of the school, on the street or road while going to or returning from school, or during intermission or recess." La.R.S. 17:416(A).

The principal of the school may suspend any student who instigates or participates in fights while under school supervision. *Id.* The statute prescribes specific procedures for the principal and the School Board to follow with respect to suspensions and expulsions.

Prior to suspending a student, the principal or his designate must advise the pupil of the particular misconduct of which he or she is accused as well as the basis for the accusation. The pupil must be given an opportunity to explain his or her version of the facts to the school principal or his designate.

After being suspended, a student may be expelled upon the recommendation of his school principal, in accordance with the provisions of La.R.S. 17:416(C). Pursuant to that subsection, the superintendent or his designate shall conduct a hearing to determine whether the student should be expelled from the school system or if other disciplinary action should be taken against him. The student is entitled to be represented at the hearing by any person of his choice. The student remains suspended until the hearing takes place.

Once the superintendent or his designate renders a decision after the hearing, the student's parent or tutor may appeal the findings of the superintendent or his designate to the city or parish school board. The school board may affirm, modify or reverse the action taken by the superintendent or his designate. Within ten days of the decision of the school board on appeal, the parent or tutor of the pupil may appeal to the district court for the parish in which the student's school is located. The district court may reverse or change the ruling of the school board if it finds that the board based its ruling on an absence of any relevant evidence to support the ruling. La. R.S. 17:416(C).

The defendants followed the Louisiana statutory procedure to the letter in expel-

ling Mr. Whiteside. The question remains whether the Louisiana expulsion process that resulted in Mr. Whiteside's expulsion comported with constitutional rules of due process of law established by *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), and its progeny. *Goss* dealt with suspensions lasting up to ten days, and the Court, in that instance, said:

> "Students facing temporary suspension have interests qualifying for protection of the Due Process Clause, and due process requires, in connection with a suspension of ten days or less, that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." 419 U.S. at 581, 95 S.Ct. at 740.

■ The question of due process essentially is a question of interest analysis. The student has an interest in avoiding unfair or mistaken exclusion from the educational process, while the educational authorities have an interest in maintaining order and discipline in the school system. *Goss v. Lopez,* 419 U.S. at 580, 95 S.Ct. at 739. A more serious penalty, *e. g.,* expulsion, requires a more serious procedure. The Court must determine whether the procedure used to expel Danny Whiteside was fundamentally fair.

■ On March 1, 1978, the United States Supreme Court added some judicial gloss to the decision in *Goss.* In *Board of Curators of the University of Missouri v. Horowitz,* — U.S. —, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978), the court stated:

> "In *Goss v. Lopez,* 419 U.S. 565 [95 S.Ct. 729, 42 L.Ed.2d 725] (1975), we held that due process requires, in connection with the suspension of a student from public school for disciplinary reasons, 'that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have an opportunity to present his side of the story.' *Id.,* at 581 [95 S.Ct., at 740]. All that *Goss* required was an 'informal give-and-take'

between the student and the administrative body dismissing him that would, at least, give the student 'the opportunity to characterize his conduct and put it in what he deems the proper context.' *Id.,* at 584 [95 S.Ct., at 741]." — U.S. at —, 98 S.Ct. at 952.

The indications from *Horowitz* are merely dicta, because *Horowitz* dealt with an academic expulsion rather than a disciplinary expulsion. However, the intent of the Court is clear: *Goss* does not require a formal hearing in the true adversary context prior to the suspension of a child for the entire school year for disciplinary reasons. — U.S. at —, 98 S.Ct. 948.

In concurring in part and dissenting in part in *Horowitz,* Justice Marshall referred to the three relevant factors listed in *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18, as relevant in determining what process is "due" in a situation:

> "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

■ Mr. Whiteside's private interest was the value of the second semester of his sophomore year in high school. There was some risk of an erroneous deprivation of that interest due to the procedure used to expel him, but he had ample notice of the charges against him and three different opportunities before three different authorities to explain his version of the facts. The cost and administrative burden on schools to hold full-scale hearings with compulsory process, cross-examination and discovery prior to expelling students for the remainder of the school year would greatly surpass the risk of error embodied in the Louisiana expulsion procedure. Even under Justice Marshall's analysis, Louisiana's expulsion procedure passes muster.

In the circumstances of this case, Danny Whiteside and his mother were entitled to a notice of the charges against him sufficient to prepare a defense of those charges. The charges need not have been drawn with the specificity required for a criminal trial proceeding. *Jenkins v. Louisiana State Board of Education,* 506 F.2d 992 (5th Cir.), *reh. denied* 510 F.2d 384 (5th Cir. 1975). Mr. Whiteside was entitled to a hearing, but the hearing need not have been in accordance with criminal trial procedure. *Jenkins v. Louisiana State Board of Education, supra; Betts v. Board of Education,* 466 F.2d 629 (7th Cir. 1972). The School Board was not required to provide Mr. Whiteside or his counsel with a list of witnesses and a summary of their testimony. *Cf. Jenkins v. State Board of Education, supra; Marin v. University of Puerto Rico,* 377 F.Supp. 613, 623 (D.P.R.1973); *Vail v. Board of Education,* 354 F.Supp. 592, 603–04 (D.N.H.1973); *Fielder v. Board of Education,* 346 F.Supp. 722 (D.Neb.1972). The School Board need not have afforded Whiteside the advantages of compulsory process or cross-examination.

## CONCLUSION

In order to be entitled to a preliminary injunction, Whiteside had to prove all four requirements of *Canal Authority of State of Florida v. Callaway,* 489 F.2d 567, 572 (5th Cir. 1974). He failed to show that he had a substantial likelihood of success on the merits. The defendants followed the Louisiana statutory procedure for expulsion to the letter. That procedure is fundamentally fair, in line with *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), and *Board of Curators of the University of Missouri v. Horowitz,* —— U.S. ——, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978). The Court had to deny the motion for a preliminary injunction.

In passing, the Court notes that the wisdom of the decision to expel Danny Whiteside was not and is not at issue in this case. On the basis of the record as it now stands, Whiteside is not a troublemaker and the discipline he received may have been harsh. Nonetheless, the West Carroll Parish authorities meted out that discipline through proceedings that were fundamentally fair. Whiteside suffered no violation of his due process rights that the Court can discern from the present state of the record.