**Leonard DILLON by his father and next friend, D. E. Dillon**

v.

**PULASKI COUNTY SPECIAL SCHOOL DISTRICT, Bonnell Birkhead, Lester Hosto, Mrs. Shirley Lowery, Ed Coffman, Hosea Harrington, J. A. Fair, Jr., Ernest Faucett, Bob Moore and Don E. Elkins.**

**No. LR–C–78–59.**

United States District Court,
E. D. Arkansas, W. D.

Aug. 15, 1978.

Wm. P. Dougherty, Jacksonville, Ark., for plaintiff.

John I. Purtle, Little Rock, Ark., for defendants.

## MEMORANDUM OPINION

ROY, District Judge.

This is an action brought pursuant to 42 U.S.C. § 1983 (1970) seeking redress for the denial of due process in the expulsion of a public school student. The matter has been submitted to the Court on a stipulation of facts entered into by the parties.

On February 3, 1978, Laura Beth Lester, a teacher at North Pulaski High School in Jacksonville, Arkansas, advised Don E. Elkins, the high school principal, that she had found the plaintiff, Leonard Dillon, then a student at the high school, kissing a girl in the hallway and that Dillon had remarked, "What a drag" when told to stop. A few

days thereafter the plaintiff's parents received a "recommendation for expulsion" notice, stating that Elkins was recommending that the plaintiff be expelled for the remainder of the school year. As reasons for the expulsion, the notice stated:

A teacher found Leonard kissing a girl in the hallway on Friday Feb. 3, 1978. The teacher asked Leonard twice to stop. Once he stopped, Leonard made the defiant remark, "What a drag!". Kissing is a direct infraction of rule # 5 of school rules and regulations for North Pulaski High School students. His defiant attitude remark is an infraction of rules # 1 and # 20 of the Student Conduct Handbook.

Pursuant to appeal procedures set forth by the Pulaski County Special School District, a hearing concerning the recommendation for expulsion was held at the plaintiff's request before the Pupil Personnel Committee of the District. Not having achieved a satisfactory result before that body, the plaintiff then requested a hearing before the Pulaski County Special School District Board, also pursuant to school board policies.

At the school board hearing, held February 14, 1978, each member of the school board was given a copy of the recommendation for expulsion notice. The sole evidence offered on behalf of the school district was the reading into the record of the statement of reasons for expulsion contained in the recommendation for expulsion. The plaintiff's attorney sought to question Ms. Lester, who was present at the hearing, concerning the events of February 3, but she declined to testify. Furthermore, the school board refused to allow the plaintiff's attorney to call Ms. Lester as a witness or to allow her to be cross-examined by the plaintiff's attorney. At the conclusion of the hearing, the school board voted to uphold the recommendation for expulsion for the reasons set forth in the recommendation. Plaintiff is presently under expulsion from North Pulaski High School.[1]

The plaintiff asserts that he was denied substantive due process by being punished for conduct that he characterizes as an expression of opinion protected by the first amendment. In addition, he alleges that he was denied procedural due process by the refusal of the school board to permit him to confront and cross-examine the accusing teacher. He seeks an award of damages and a mandatory injunction that would order the school board to reinstate him as a student in good standing.

As to the plaintiff's substantive due process claim, there can be no doubt that first amendment rights are available to teachers and students. "It can hardly be argued that either students or teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Tinker v. Des Moines Independent Community School District,* 393 U.S. 503, 506, 89 S.Ct. 733, 736, 21 L.Ed.2d 731 (1969). Nonetheless, it is also clear that school officials may properly prescribe and control conduct in the schools, consistent with fundamental constitutional safeguards. *Id. at 507, 89 S.Ct. 733.* The state has a vital interest in maintaining an orderly and effective educational system for its youth. Therefore, school officials must retain a wide latitude of discretion in formulating reasonable regulations and standards of conduct designed to protect and further the goals of the school system, each of these goals contributing to the maintenance of order and decorum within the educational system. *Burnside v. Byars,* 363 F.2d 744, 748 (5th Cir. 1966); *see Tate v. Board of Education,* 453 F.2d 975, 978 (8th Cir. 1972); *Esteban v. Central Missouri State College,* 415 F.2d 1077, 1089 (8th Cir. 1969), *cert. denied,* 398 U.S. 965, 90 S.Ct. 2169, 26 L.Ed.2d 548 (1970).

Democracy at work requires that citizens learn to question the decisions of those in authority, but these citizens must also learn to voice their objections in a reasonable and

---

1. No stipulation has been entered into concerning actual damages that the plaintiff suffered as a result of the actions of the school board, and no evidence has been presented by the plaintiff to demonstrate the existence or extent of any such damage.

effective manner. One goal of the educational process, therefore, should be to instill in students a respect for authority. Not only is this an important lesson to be learned by students, it also is necessary for the effective functioning of the educational system, *see Burnside, supra,* at 749.

It is readily apparent that in expelling the plaintiff the school was attempting to punish both the lack of respect he had allegedly manifested toward Ms. Lester by his response to the teacher's admonitions to stop kissing, and his violation of a school rule regarding a public display of affection. The imposition of disciplinary action on a student for such misconduct or disrespect is within the proper bounds of regulation of school officials to "prescribe and control conduct," *Tinker, supra,* at 507, 89 S.Ct. 733, and to maintain "order and decorum," *Burnside, supra,* at 748. Therefore, inasmuch as the plaintiff's public display of affection had potential to disrupt the academic environment, and his response to the teacher could have been stated in a disrespectful manner, it was proper for the school board to prescribe such actions as an unacceptable standard of student conduct.

The plaintiff, however, must prevail on his procedural due process claim, for he should have been given a meaningful opportunity to demonstrate that he was not guilty of the conduct alleged, or that his conduct had not met the level of disruption envisioned by the school regulation. A public education is an entitlement that may not be taken away from a student for misconduct without adherence to the minimum procedures required by the due process clause. *Goss v. Lopez,* 419 U.S. 565, 574, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). What must be resolved in this instance is what process is due the plaintiff. *See Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1971).

"Due process" is an elusive concept. Its exact boundaries are undefinable and its content varies according to specific factual contexts. . . . Whether the Constitution requires that a particular right obtain in a specific proceeding depends upon a complexity of factors. The nature of the alleged right involved, the nature of the proceeding, and the possible burden on that proceeding, are all considerations which must be taken into account. *Hannah v. Larche,* 363 U.S. 420, 442, 80 S.Ct. 1502, 1515, 4 L.Ed.2d 1307 (1960). The nature of the hearing required by due process thus depends on an "appropriate accommodation of the competing interests involved," *Goss, supra* 419 U.S. at 579, 95 S.Ct. at 739; bearing in mind the nature of the governmental function involved and the private interest that will be affected by government action, *Cafeteria & Restaurant Workers Union, Local 473 v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961).

In *Goss* students had received ten-day suspensions from school without the benefit of any hearing and without receiving notice prior to the imposition of their suspensions. There the Court held that, "[a]t the very minimum . . . students facing suspension . . . must be given *some* kind of [hearing]." *Goss, supra,* 419 U.S. at 579, 95 S.Ct. at 738. In the case of ten-day suspensions, the Court indicated that what it styled "a rudimentary hearing," giving the student a chance "to present his side of the story" would be appropriate. *Id.* at 581–82, 95 S.Ct. at 740. The Court, however, specifically refused to require that the school board give the student the opportunity to confront and cross-examine his accusers, although it indicated that the finder of fact might choose to use such a procedure in an effort to ascertain the facts leading to the recommendation of suspension. *Id.* at 583–84, 95 S.Ct. 729. However, in regard to disciplinary action which would have a more detrimental effect on a student than that imposed by a ten-day suspension, the Court noted that more formal procedures might be required. *Id.* at 584, 95 S.Ct. 729. The question now before this Court is whether such a longer suspension requires that a student subject to disciplinary action be given the right to confront his accuser.

Numerous lower courts have attempted to resolve the question of precisely which

procedural rights are available to students facing disciplinary action. Because it is generally accepted that "the nature of the sanction affects the validity of the procedure used in imposing it", *Farrel v. Joel*, 437 F.2d 160, 162 (2d Cir. 1971), the necessity of a formal hearing including the right of cross-examination has generally been rejected in cases involving suspensions measured in days. *See, e. g., Farrel, supra; Tate, supra; Vail v. Board of Education*, 354 F.Supp. 592 (D.N.H.1973). However, when a student faces expulsion, it has been recognized that due process may require that the student be permitted an opportunity to be heard, notice of the time and place of the hearing, right to counsel, and the right to confront the school official or teacher having primary knowledge of the facts relevant to the disciplinary proceeding. *Strickland v. Inlow*, 519 F.2d 744 (8th Cir. 1975) on Remand from *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); *Fielder v. Board of Education of School District of Winnegago*, 346 F.Supp. 722 (D.Neb.1972); *Black Coalition v. Portland School Dist. No. 1*, 484 F.2d 1040 (9th Cir. 1973); *Graham v. Knutzen*, 351 F.Supp. 642 (D.Neb.1972); *Graham v. Knutzen*, 362 F.Supp. 881 (D.Neb.1973) (supplemental opinion); *see also, Farrel, supra*, at 162; *cf. Tate, supra*, at 979.

The competing interests between the effective administration of the educational system and the protection of a student's entitlement to receive an education within this system may mean that even in expulsion proceedings some limits should be imposed on the right to confront the individuals who have made accusations that have led to disciplinary proceedings. Thus, in *Graham, supra*, 351 F.Supp. at 666, it was suggested that the need for anonymity of student accusers, who might otherwise be the victim of reprisals from fellow students, could prevail over the right to confrontation. Such considerations, however, do not apply where the individual bringing the complaint is a teacher or administrator, who would not be subject to the ostracism and psychological trauma that a student accuser might suffer at the hands of his peers. It is fundamental to the basic sense of fair play embodied in the due process clause, *see Hannah, supra*, 363 U.S. at 442, 80 S.Ct. 1502, that a student facing the grievious loss of a full year of education be permitted to learn first hand the reasons for the proposed punishment from accusing school officials.

In effect, the Pulaski County Special School District Board upheld the expulsion of the plaintiff simply on the evidence that a complaint had been made concerning his conduct. The identity of the teacher originally responsible for the initiation of disciplinary proceedings against Dillon was known, and she was present at the school board hearing. Certainly in regard to the allegation that the plaintiff had been disrespectful, her testimony was critical. Neither she nor the school board faced any greater loss than a few minutes of their time if she were to be required to explain to the school board the reasons for her report and to submit to cross-examination by the plaintiff's attorney. Under all the circumstances, due process clearly demanded that the plaintiff should have been given an opportunity to question her before the school board at its disciplinary hearing concerning the details of his alleged misconduct.

Although this Court therefore finds that the plaintiff was denied due process of law by the refusal of the school board to permit him to call the accusing teacher as a witness, there has been no proof made or offered of the actual injuries sustained by the plaintiff as a result of this denial of his constitutional rights. It is clear from the recent decision of the Supreme Court in *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), that, absent proof of actual loss, the plaintiff is entitled to nominal damages, but no more.

IT IS THEREFORE ORDERED AND ADJUDGED that the defendants be, and they hereby are, enjoined to immediately

reinstate the plaintiff as a student in good standing.[2]

IT IS FURTHER ORDERED AND ADJUDGED that the defendants be and they are hereby ordered to expunge all references to the plaintiff's February 14, 1978 expulsion from North Pulaski High School from the plaintiff's school records and files. The defendants need not expunge the plaintiff's records until the defendants have exhausted all available appeal procedures.

IT IS FURTHER ORDERED AND ADJUDGED that the plaintiff recover and have judgment against the defendants, jointly and severally, in the sum of one (1) dollar, as nominal damages for infringements upon the plaintiff's right to procedural due process of law.

IT IS SO ORDERED THIS 15th DAY OF AUGUST, 1978.

2. The plaintiff's reinstatement as a student in good standing is appropriate notwithstanding the expiration of the school year in question. A brief review of the history of this case substantiates the conclusion that the delay in reaching a decision on the merits of the plaintiff's claim for relief was occasioned by circumstances wholly beyond the plaintiff's control. The complaint in the present case was filed on February 24, 1978 and, in due course, was assigned to the docket of the Honorable Terry L. Shell, United States District Judge for the Eastern District of Arkansas. The alleged events which ultimately culminated in the plaintiff's expulsion from high school occurred on or about February 3, 1978. On March 16, 1978, Judge Shell conducted a hearing on the plaintiff's request for preliminary injunctive relief. The plaintiff's request was under advisement at the time of Judge Shell's death on June 25, 1978. The present case, as well as the balance of Judge Shell's docket, was transferred to this court in July of 1978.

The disciplinary action taken by the defendants in the present case unquestionably creates the potential of adversely affecting the plaintiff's future educational and employment opportuni-

ties. *Cf. Greenhill v. Bailey,* 519 F.2d 5 (8th Cir. 1975) (Fourteenth Amendment's procedural safeguards applicable to medical student's academic dismissal where notice of dismissal was sent to a committee of an association of medical schools and was accompanied by a statement that the student lacked "intellectual ability" or had insufficiently prepared his course work). In view of this consideration, Judge Shell's tragic death and the resulting aggravation of this court's presently congested docket, it would be a manifest injustice for this court to conclude that the plaintiff no longer stands in need of injunctive relief merely because the school year has ended. All of the aforementioned circumstances bring the plaintiff's claim for relief within that class of claims which are "capable of repetition, yet evading review". *Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911). *See Roe v. Wade,* 410 U.S. 113, 124–125, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), holding that the natural termination of a pregnancy did not moot an action challenging the restrictions on abortions. *See, also, Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976).