[L.A. No. 31391. Dec. 10, 1982.]

JOHN A., a Minor, etc., Plaintiff and Appellant, v.
SAN BERNARDINO CITY UNIFIED SCHOOL DISTRICT et al.,
Defendants and Respondents.

302

**COUNSEL**

Carlos L. Juarez, Albert A. Duarte, Cynthia Ludvigsen, Jeffrey L. Kastner, Ronald L. Taylor, Paul Henry Abram and Nathan L. Rosenberg for Plaintiff and Appellant.

Bruce Saltzer, Kenyon F. Dobberteen, Mary Burdick and Paul Weckstein as Amici Curiae on behalf of Plaintiff and Appellant.

Ronald C. Ruud, Judith J. Clem and Atkinson, Andelson, Rudd & Romo for Defendants and Respondents.

John H. Larson, County Counsel (Los Angeles), Roberta M. Fesler, Deputy County Counsel, Ron Apperson, George Deukmejian, Attorney General, and Robert E. Murphy, Deputy Attorney General, as Amici Curiae on behalf of Defendants and Respondents.

## OPINION

**BROUSSARD, J.**—Plaintiff appeals from a judgment denying petition for writ of mandate to compel readmission to high school.

After a high school freshman football game, an altercation involving a number of the players erupted on the San Bernardino High School campus. No teachers, coaches or other school officials witnessed the incident. The mother of a team member informed the school administration that her son and another boy had been assaulted and injured during the fight. Vice Principal Fitzgerald was assigned to investigate the incident. He obtained signed statements from eight students who were allegedly involved in the altercation, including plaintiff, then a fourteen-year-old freshman. Plaintiff was suspended from school for his alleged participation in the fight and notice of the suspension was sent to his mother.

The school principal recommended plaintiff be expelled,[1] and the district superintendent's office informed plaintiff's mother by letter that a hearing had been scheduled on the question of plaintiff's expulsion for assaulting and injuring two students without provocation. The letter also informed plaintiff and his mother that they would have an "opportunity to participate in the discussion of his case," that they could "present evidence, both oral and documentary," and that they might be accompanied by a friend or advisor or, if they desired, might "employ and be represented by counsel." Enclosed with the letter was a copy of the school district's rules on student discipline which contained a recital of the matters required to be included in a notice of an expulsion hearing.[2]

---

[1]All section references in this opinion are to the Education Code unless otherwise indicated.

Section 48904.5 provides that a principal may recommend a pupil for expulsion for any of the acts specified in section 48900 which includes: "(c) Caused, attempted to cause, or threatened to cause physical injury to another person . . . ."

[2]Section 48914, subdivision (b), provides: "(b) Written notice of the hearing shall be forwarded to the pupil and the pupil's parent or guardian at least 10 days prior to the date of the hearing. Such notice shall include: the date and place of the hearing, a statement of the specific facts and charges upon which the proposed expulsion is based, a copy of all the rules of the district which pertain to discipline adopted pursuant to Section 35291, and the opportunity of the

The three-member hearing panel was composed of certificated employees of the district who were not employed at the high school attended by plaintiff.[3] Plaintiff, his mother, and Vice Principal Fitzgerald were in attendance at the hearing. The chairperson of the hearing panel opened the proceedings by telling plaintiff and his mother that the purpose of the hearing was to afford them the opportunity to hear the charges and the information gathered by the school staff, the chance to refute or add to that information, and to make statements on plaintiff's behalf. The chairperson then read into the record a letter from the high school principal to the district superintendent recommending plaintiff's expulsion for the alleged assaults,[4] Mr. Fitzgerald's written report of his investigation, and the signed statements. The chairperson then turned to plaintiff and asked: "What exactly happened that day after the football game?" After a one-sentence answer, plaintiff was thereafter questioned by panel members concerning the incident, his attendance record and an incident in which he was reported to have hit another student in class.

Neither the two injured boys nor any of the other witnesses to the fracas testified, and there was no showing that they were unwilling to testify or that by testifying they would subject themselves to a substantial risk of harm.

In the statements which Mr. Fitzgerald obtained from the students, each gave a somewhat different version of the incident; six, however, said that plaintiff had either struck or kicked the two boys who were allegedly injured. The two boys and several other witnesses said that plaintiff and several others chased the injured boys and caught them, and plaintiff and another boy started hitting the two injured boys. Other students broke up the fight, and the police were called.

Plaintiff, both in his statement to Mr. Fitzgerald and at the hearing, maintained that he neither struck nor kicked the boys. He did admit holding one of them. He characterized the entire incident as "play boxing" such as often took place after football practice or games. In response to questions from the panel, plaintiff insisted that the incident had not been racially motivated; he denied he had yelled, "White boy" or chased the two boys at the beginning of the melee.

---

pupil or the pupil's parent or guardian to: appear in person or to employ or be represented by counsel, inspect and obtain copies of all documents to be used at the hearing, confront and question all witnesses who testify at the hearing, question all other evidence presented, and present oral and documentary evidence on the pupil's behalf, including witnesses."

[3]Section 48914, subdivision (d), provides that the hearing may be conducted by the governing board, "county hearing officer," a hearing officer from the Office of Administrative Hearings, or the board "may appoint an impartial administrative panel of three or more certificated employees of the district, none of whom shall be on the staff of the school in which the pupil is enrolled."

[4]The principal's letter to the district superintendent also stated that plaintiff had been counselled on two prior occasions for attendance problems and an earlier incident in which he struck another student in class.

He also felt that the two boys could not have been injured because they attended and took part in football practice the following Monday. Vice Principal Fitzgerald stated that at the time he conducted the investigation the boys "didn't have any obvious injuries," but that from the statements they made he was of the view that they were "in pain, at the time of the fight." Plaintiff's mother told the panel that plaintiff had never been in serious trouble before.

The hearing panel found that plaintiff along with another student "took part in an unprovoked attack on two students" and recommended that plaintiff be expelled for the remainder of the school year (circa six and one-half months); it also recommended that he be readmitted earlier "upon receipt of a letter from a licensed therapist indicating satisfactory involvement in a counseling program." The school board adopted the hearing panel's recommendation and ordered plaintiff expelled for the remainder of the school year. Plaintiff appealed the expulsion to the county board of education, but the board, after hearing, affirmed the school board's decision.

Plaintiff filed a petition for mandamus claiming he was denied procedural due process before the administrative hearing panel. In the course of the hearing, the trial court, over plaintiff's objection, permitted the district to file approximately 30 declarations from district school administrators. The declarations were to the effect that it was essential to the safety and welfare of students that schools be able to discipline students without subjecting their accusers to confrontation and cross-examination because otherwise fear of retaliation would make students reluctant to give information on disciplinary matters. The administrators recited instances where there had been threats of retaliation and retaliation against student witnesses by accused students and their friends and where witnesses changed schools to avoid harassment.[5]

The court decided that plaintiff's administrative hearing had been fair and after exercising its independent judgment on the evidence determined that the hearing panel's findings were supported by the weight of the evidence. The court made findings of fact and conclusions of law accordingly and entered judgment denying the petition for writ of mandate. Plaintiff appeals from the judgment.

Plaintiff contends that he had a right to confront and cross-examine the witnesses to the altercation and that deprivation of that right rendered his expulsion invalid. We conclude that under the relevant statutory provisions it was im-

---

[5]The trial judge stated that he thought the declarations should "be a part of the record," but did not think they had any probative value in plaintiff's case. Plaintiff contends that the court erred in permitting the declarations to be introduced into evidence because the district failed to satisfy the requirements of Code of Civil Procedure section 1094.5, subdivision (e). In view of our disposition of this appeal on another ground, it is unnecessary for us to decide this issue.

proper to expel plaintiff without the testimony of any of the witnesses to the altercation. Accordingly, we find it unnecessary to address plaintiff's claim he was deprived of the right of confrontation and cross-examination in violation of the due process clauses of the federal and state Constitutions.

■ The district preliminarily urges that plaintiff's readmission to school has rendered this appeal moot. Even if that were so, this case comes within the well-recognized qualification to the general rule that where, as here, the appeal presents questions of continuing public interest that are likely to recur, resolution of those issues is appropriate. (*Marin County Bd. of Realtors, Inc.* v. *Palsson* (1976) 16 Cal.3d 920, 929 [130 Cal.Rptr. 1, 549 P.2d 833]; *Green* v. *Layton* (1975) 14 Cal.3d 922, 925 [123 Cal.Rptr. 97, 538 P.2d 225]; *Eye Dog Foundation* v. *State Board of Guide Dogs for the Blind* (1967) 67 Cal.2d 536, 542 [63 Cal.Rptr. 21, 432 P.2d 717].) What process is due a student facing expulsion from a public school is a matter of continuing importance to children in the public school system, school boards, and school administrators.

■ The power to expel for misconduct is not placed in the school's administrative officials but in the governing board. The principal recommends expulsion (§ 48904.5), and thereafter a hearing is held by the board, a hearing officer or an impartial administrative panel of district employees. If a hearing officer or administrative panel hears the matter, findings of fact must be made, and the officer or panel makes recommendations to the board. (§ 48914.)

Section 48914, subdivision (b) provides for confrontation and cross-examination of witnesses "who testify at the hearing." Subdivision (f) of the section provides: "Technical rules of evidence shall not apply to such hearing, but evidence may be admitted and given probative effect only if it is the kind of evidence upon which reasonable persons are accustomed to rely in the conduct of serious affairs. A decision of the governing board to expel must be supported by a preponderance of the evidence."

The requirement that the board's decision to expel be supported by a preponderance of the evidence establishes that the burden is on the school district to establish cause for expulsion. The requirement of subdivision (f) that evidence may be given probative effect only if it is the kind of evidence upon which reasonable persons are accustomed to rely in the conduct of serious affairs establishes the standard to be applied in assessing the weight to be given the evidence. While reasonable persons often rely on statements and reports (Cal. Administrative Agency Practice (Cont.Ed.Bar 1970) Hearing Procedure, § 3.22, pp. 155-156), a reasonable person in the conduct of serious affairs will not rely solely on written statements but will demand that witnesses be produced so that their credibility may be tested and their testimony weighed against conflicting evidence when their testimony appears readily available and there is

no substantial reason why their testimony may not be produced. By placing the power of expulsion in the governing board rather than the administrators, the Legislature has manifested its intent that the board not merely review the administrator's decision but determine credibility and weigh evidence. It may not rely on administrative reports when evidence is conflicting and witnesses are readily available.

In the circumstances of the instant case, the evidence fails to meet the statutory requirement. The evidence at the hearing was in sharp dispute. Plaintiff testified in accordance with his statement to the vice principal that he did not strike or kick the two injured boys. No other witness to the altercation testified. Rather, the school district relies upon the vice principal's report and some of the written statements by witnesses. There is no showing that the witnesses were unavailable or of any substantial reason precluding their testimony.

We are aware that in some cases revelation of student witnesses' names and requiring the students to testify may subject them to a substantial risk of retaliation. In such a case the witnesses are not readily available. We do not preclude the board from relying upon statements and reports where it finds that disclosure of identity and producing the witnesses would subject the informant to significant and specific risk of harm. (Cf. *Morrissey* v. *Brewer* (1972) 408 U.S. 471, 487 [33 L.Ed.2d 484, 497, 92 S.Ct. 2593]; *People* v. *Winson* (1981) 29 Cal.3d 711, 716 et seq. [175 Cal.Rptr. 621, 631 P.2d 55].) While the risk of retaliation may be substantial in some cases, it does not warrant board reliance on reports in all cases or in the instant case where there is no showing or finding of a significant and specific risk of harm.

In the circumstances of the instant case the school district failed to establish cause for expulsion by a preponderance of evidence upon which reasonable persons are accustomed to rely in the conduct of serious affairs.

Plaintiff also contends that he was denied his constitutional right to a decision by an impartial factfinder because the hearing panel was composed of district employees. Section 48914, subdivision (d), provides that the hearing may be conducted by "an impartial administrative panel of three or more certificated employees of the district, none of whom shall be on the staff of the school in which the pupil is enrolled," and this procedure was followed. Plaintiff argues that teachers have a built-in bias in disciplinary matters against students, preventing them from rendering a fair decision.

This court recently addressed a claim of biased hearing officer in *Andrews* v. *Agricultural Labor Relations Bd.* (1981) 28 Cal.3d 781 [171 Cal.Rptr. 590, 623 P.2d 151]. A temporary administrative law officer was hearing unfair labor practice charges against agricultural employers, and they attempted to dis-

qualify on the ground that his law firm regularly represented Spanish-surnamed persons and farm workers against agricultural employers and that he personally represented Spanish-surnamed persons in a claim of employment discrimination. It was held that the administrative law officer did not err in refusing to disqualify himself.

The court recognized that the "right to an impartial trier of fact is not synonymous with the claimed right to a trier completely indifferent to the general subject matter of the claim before him," that the concept of bias refers to a mental attitude or disposition towards a party to the proceedings, that bias in the sense of crystallized point of view about issues of law or policy "is almost universally deemed no ground for disqualification," and that if bias and partiality are defined to mean the total absence of preconceptions in the mind of the judge " 'no one has ever had a fair trial and no one ever will' " because all have attitudes which affect them in judging situations. (28 Cal.3d at pp. 790-791.)

Even if we were to assume that most teachers have general views as to student discipline adverse to the student—a matter by no means clear—such would not furnish a ground for disqualification. The determination whether to seek hearing officers closely attuned to current educational processes rather than persons not involved in those processes presents a question for the legislative agencies, and their determination to permit teachers to serve on the hearing panel does not result in a denial of due process.

Plaintiff also urges that the panel's questioning showed bias, but we have examined the record and it fully supports the trial court finding that the hearing was conducted in a fair and impartial manner.

█ Plaintiff claims that because he was indigent and unable to "employ" counsel, the notice of hearing should have informed him that free legal assistance would be available to him through local legal aid offices. Apparently free legal services were available to indigent students in the San Bernardino area, and plaintiff asserts that the school district was aware of the availability of free services.

In accordance with section 48914, subdivision (b), the notice provided that plaintiff could be accompanied by a friend or advisor or employ or be represented by counsel. The notice was sufficient. The availability of free legal services for indigents varies throughout the state, and even in areas where services are available, they may be available in school expulsion cases only on a case-by-case basis, depending upon other burdens assumed by law firms providing services to indigents. Without knowing what matters plaintiff would

seek to assert at the hearing, the district was not in a position to determine the availability of free services to plaintiff.

The judgment is reversed with directions to the trial court to issue a peremptory writ of mandate commanding the school district to expunge plaintiff's expulsion from his record.

Compton, J.,* concurred.

Bird, C. J., and Kaus, J., concurred in the result.

**NEWMAN,** I concur, except that I do not agree with the statements in the lead opinion regarding a finding by the board "that disclosure of identity and producing the witnesses would subject the informant to significant and specific risk of harm" (*ante,* p. 308).

There has been no suggestion here that the Legislature ever considered the informant problem. Since it is not at all clear how "reasonable persons . . . in the conduct of serious affairs" (Ed. Code, § 48914, subd. (f)) would react to that problem, those who are convinced that it should be addressed should seek action by the Legislature, not dicta from this court.

**MOSK, J.**—I dissent.

As will appear, I conclude that the safeguards established by the Legislature for such proceedings and followed herein adequately ensure notice and an opportunity to be heard, and provide a "meaningful hedge against erroneous action." (*Goss* v. *Lopez* (1975) 419 U.S. 565, 583 [42 L.Ed.2d 725, 739, 95 S.Ct. 729].)

John A. was expelled from San Bernardino High School for the remainder of the 1978-1979 school year after a hearing panel upheld charges that he "did violently assault and injure two students" on the campus on October 26, 1978, when he was a 14-year-old ninth-grade student.

Plaintiff's mother was given written notice of the expulsion hearing three weeks before it was held. The notice, sent by certified mail, informed her that she and plaintiff "will be given the opportunity to present evidence both oral or documentary. You may be accompanied by a friend or advisor, and if you desire, employ and be represented by counsel." Enclosed with the notice was a copy of the school district's discipline rules, which recited inter alia that plaintiff could introduce oral and documentary evidence on his own behalf,

---

*Assigned by the Chairperson of the Judicial Council.

"including the calling of witnesses, and may confront and question all witnesses who appear at the hearing."

Plaintiff and his mother appeared at the hearing, without counsel. Statements that had been given to the vice principal by several witnesses to the incident in question, including the alleged victims and the alleged coassailant, were read into the record, but no eyewitnesses appeared at the hearing. The statements variously accused plaintiff of hitting, throwing to the ground, "wrestling," jumping, and kicking one victim and another student who interceded. Under questioning by the hearing panel plaintiff generally denied the charges, but conceded that he and a friend chased the two victims and that he caught and held one of them. He offered no witnesses of his own, and neither he nor his mother asked to question or confront the persons whose statements had been introduced.

The panel voted to expel plaintiff only for the remainder of the school term; he was advised he could apply for reinstatement on June 14, 1979, or sooner upon recommendation of a licensed therapist indicating satisfactory involvement in a counseling program. The panel's recommendation was adopted by the district board of education, and that decision was upheld by the county board of education. Plaintiff then filed an administrative mandamus action in superior court to set aside his expulsion. (Code Civ. Proc., § 1094.5.) The court found that the hearing afforded to plaintiff and the evidence adduced in support of the decision to expel him for the remainder of the term complied with all the requirements of the Education Code and with the constitutional standards of due process. It therefore upheld the limited expulsion, and this appeal followed. I would affirm the trial court's conclusion.

At the outset, I heartily agree with plaintiff's first two assertions: public education is a fundamental right protected by the due process clause, and students facing serious disciplinary proceedings are entitled to due process. The real question is that which was posed in *Goss* v. *Lopez* (1975) *supra,* 419 U.S. 565, 577 [42 L.Ed.2d 725, 737]: " 'Once it is determined that due process applies, the question remains what process is due.' " I turn to that crucial issue.

Plaintiff's primary claim is that defendant district's expulsion procedures were infirm because it failed to give him adequate notice of the right to counsel and it did not provide him the right to confront and cross-examine his accusers.

The notice given to plaintiff stated in relevant part that he could "be accompanied by a friend or advisor, and if you desire, employ and be represented by counsel." In identical words, Education Code section 48914, subdivision (b), provides that the written notice to the pupil or his guardian must inform them of the opportunity to "appear in person or to employ and be represented by

counsel . . . ." Plaintiff contends that because he was indigent and unable to "employ" counsel, the notice should also have informed him that free legal assistance would be available to him.

Plaintiff urges, somewhat curiously, that section 48914, subdivision (b), supports his claim. The statute certainly does provide for notice of the right to counsel, but it is difficult to find fault with a notice that tracks verbatim the relevant language of the section. Nor do the cases cited by plaintiff require the type of notice for which he argues; they state merely that notice must be given of the right to have counsel present. The statute does no less, and defendant complied with it. (Compare *Wasson* v. *Trowbridge* (2d Cir. 1967) 382 F.2d 807, 812 [student need not be represented by counsel in an expulsion proceeding] with *Gonzales* v. *McEuen* (C.D.Cal. 1977) 435 F.Supp. 460, 467 [student must be notified of right "to be represented by counsel"].)

Moreover, plaintiff is assuming too much, as it is far from certain that in all cases an indigent student would be entitled to free counsel. Whether an indigent is entitled to appointment of counsel at public expense, as in criminal and quasi-criminal proceedings, is strongly questioned in the administrative context, and there is little authority supporting such a constitutional right. (5 Witkin, Summary of Cal. Law (8th ed. 1974) Constitutional Law, § 305, p. 3598; see, e.g., *Borror* v. *Department of Investment* (1971) 15 Cal.App.3d 531, 540 [92 Cal.Rptr. 525] [no case requires appointment of counsel for indigents in administrative proceedings, but cases have held to the contrary]; *In re Schoengarth* (1967) 66 Cal.2d 295, 304 [57 Cal.Rptr. 600, 425 P.2d 200] [no right to appointment of counsel in proceedings before Adult Authority to determine whether parole should be granted]; *Goldberg* v. *Kelly* (1970) 397 U.S. 254, 270 [25 L.Ed.2d 287, 300, 90 S.Ct. 1011] [welfare recipient must be allowed to retain an attorney at welfare pretermination proceedings, but counsel need not be provided]; *In re Tucker* (1971) 5 Cal.3d 171, 180 [95 Cal.Rptr. 761, 486 P.2d 657] [no right to counsel at parole revocation hearing].)

We need not decide here whether an indigent student has the right upon demand to appointed counsel at an expulsion hearing. Frankly, I doubt it, but here I would hold only that in view of the uncertainty surrounding the availability and source of free legal aid and the right, or lack thereof, to appointed counsel, defendant district was not required to give the particular notice for which plaintiff now insists.

The primary issue in this case is plaintiff's contention that his inability to confront and cross-examine his accusers denied him procedural due process. He asserts that his expulsion solely on the basis of contradicted hearsay declarations elicited by the vice principal was unfair. No previous California appellate decision has squarely faced the issue.

The landmark case of *Goss v. Lopez* (1975) *supra,* 419 U.S. 565, 581 [42 L.Ed.2d 725, 738], held, in connection with a suspension of 10 days or less, that a student must be given "oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." The court reasoned that due process "requires at least these rudimentary precautions against unfair or mistaken findings of misconduct and arbitrary exclusion from school." (*Ibid.*) The court cautioned, however, "We stop short of construing the Due Process Clause to require, countrywide, that hearings in connection with short suspensions must afford the student the opportunity to secure counsel, to confront and cross-examine witnesses supporting the charge, or to call his own witnesses to verify his version of the incident." (*Id.,* at p. 583 [42 L.Ed.2d at p. 740].) Finally, the court specifically left unresolved the question of what process is due in an expulsion hearing: "We should also make it clear that we have addressed ourselves solely to the short suspension, not exceeding 10 days. Longer suspensions or expulsions for the remainder of the school term [as here], or permanently, may require more formal procedures." (*Id.,* at p. 584 [42 L.Ed.2d at p. 740].)

In response to *Goss* the Legislature enacted chapter 6, article 1, of the Education Code (§ 48900 et seq.). (See *Review of Selected 1977 California Legislation* (1978) 9 Pacific L.J. 281, 507-508.) The procedures established thereby must be examined in light of *Goss* to determine whether they meet due process requirements. (*Id.,* at p. 508.) In particular, the Legislature appears to have attempted to anticipate the "longer suspensions or expulsions" left open in *Goss,* by providing the "additional and more formal procedures" suggested by that opinion. (*Ibid.*)

The procedures relevant here are contained in section 48914. In addition to notifying the student of the right to "employ and be represented by counsel," the school is required by the statute to inform him of the right to "confront and question all witnesses who testify at the hearing, question all other evidence presented, and present oral and documentary evidence . . ., including witnesses." (§ 48914, subd. (b).) "Technical rules of evidence" do not apply at the expulsion hearing, "but evidence may be admitted and given probative effect only if it is the kind of evidence upon which reasonable persons are accustomed to rely in the conduct of serious affairs." (*Id.,* subd. (f).) And a decision of the governing board of the school district to expel the student "must be supported by a preponderance of the evidence." (*Ibid.*)

The procedures mandated by section 48914 were complied with in this case. The notice sent to plaintiff's mother referred to the enclosed rules pertaining to student discipline, which in turn mention the student's right to call witnesses and confront and question all witnesses who appear at the hearing.

Plaintiff does not deny he was given notice of the right to cross-examine all witnesses who testify against him. Rather, he submits that since no such witnesses were called and hearsay evidence alone supported the expulsion decision, he was effectively denied the right of confrontation. Due process, he argues, does not permit hearsay statements to support an expulsion.

I start with the obvious premise that not all situations calling for procedural safeguards require the same kind of procedure. (*Morrissey* v. *Brewer* (1972) 408 U.S. 471, 481 [33 L.Ed.2d 484, 494, 92 S.Ct. 2593].) Due process does not mandate a trial-type hearing in every conceivable case of government impairment of a private interest. (*Cafeteria Workers* v. *McElroy* (1961) 367 U.S. 886, 894 [6 L.Ed.2d 1230, 1235, 81 S.Ct. 1743].) "The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." (*Id.*, at p. 895 [6 L.Ed.2d at p. 1236].) Rather, as we explained in *People* v. *Ramirez* (1979) 25 Cal.3d 260, 269 [158 Cal.Rptr. 316, 599 P.2d 622], the extent to which due process relief will be available depends on a careful balancing of the interests at stake in each context. While in some instances the result of this balancing may be to require formal hearing procedures, including the rights of confrontation and cross-examination and a limited right to an attorney, this is not automatically true; on other occasions due process may require "only that the administrative agency comply with the statutory limitations on its authority." (*Ibid.*)

I am convinced this is such a case. The interest of a public school student in avoiding an erroneous expulsion, although substantial, is outweighed by the district's interest in maintaining discipline and safety of fellow students without resort to a full judicial-type hearing, replete with counsel for both sides, recording of testimony, preparation of a record, and constrained by technical rules of evidence. The Legislature, while conforming California law to the mandates of *Goss*, has determined that a district need not provide such a courtroom environment. Mindful of the burdens of time and expense that a full-blown trial system would impose on our already financially troubled school districts, I too would decline to do so.

Mandatory attendance of all witnesses and cross-examination by the pupil's lawyer would inevitably entail a virtual trial every time a permanent or limited expulsion was sought. In addition, confrontation of student witnesses in such hearings would inevitably lead to unhappy results in the form of later schoolyard confrontations. Judicial notice (Evid. Code, § 452, subd. (g)) can be taken of the fact that discipline is a major problem in the schools today and that student accusers might suffer "ostracism and psychological trauma," or worse, at the hands of their peers. (*Dillon* v. *Pulaski Cty. Special Sch. Dist.* (E.D.Ark. 1978) 468 F.Supp. 54, 58.) Nor is it an answer to require mandatory attendance of witnesses unless the school district can affirmatively show a

danger of reprisal. This procedure, too, would unnecessarily complicate expulsion hearings, forcing a minihearing and set of findings by the hearing officer or panel on the issue of such danger before the inquiry into the merits even began.

My conclusion that compulsory attendance of witnesses, confrontation, cross-examination and all the other trappings of a full-dress judicial hearing are not required also recognizes that a student in a public school setting may be subject to more stringent regulations than an adult outside a school environment. (*Montalvo* v. *Madera Unified Sch. Dist. Bd. of Education* (1971) 21 Cal. App.3d 323, 330 [98 Cal.Rptr. 593].) While students do not shed their rights at the schoolhouse gate (*Tinker* v. *Des Moines School Dist.* (1969) 393 U.S. 503, 506 [21 L.Ed.2d 731, 737, 89 S.Ct. 733]), the states have broad authority to prescribe and enforce standards of conduct in schools. (*Goss* v. *Lopez, supra*, 419 U.S. at p. 574 [42 L.Ed.2d at p. 734].)

The lower federal court decisions cited by plaintiff do not compel a different result. In this context, the cases are inconclusive and in some disarray on the subject of mandatory cross-examination and confrontation of witnesses. (See, e.g., *Dixon* v. *Alabama State Board of Education* (5th Cir. 1961) 294 F.2d 150, 1_8, cert. den. 368 U.S. 930 [7 L.Ed.2d 193, 82 S.Ct. 368] [nature of hearing should vary with circumstances, but "this is not to imply that a full-dress judicial hearing with the right to cross-examine witnesses, is required"; such a hearing might be disruptive and impractical]; *Black Coalition* v. *Portland School District No. 1* (9th Cir. 1973) 484 F.2d 1040 [expulsion procedures unconstitutional for failing to provide any hearing at which student could be represented by counsel and present his own witnesses and cross-examine adverse witnesses]; *Hatch* v. *Goerke* (10th Cir. 1974) 502 F.2d 1189 [at least an informal hearing required before expulsion]; *Dillon* v. *Pulaski Cty. Special Sch. Dist.* (E.D.Ark. 1978) *supra*, 468 F.Supp. 54 [due process denied by refusal of school board to allow student to call the accusing teacher as a witness; but the need for anonymity of student accusers who might otherwise be the victim of reprisals from fellow students could prevail over the right to confrontation]; *Esteban* v. *Central Missouri State College* (W.D.Mo. 1967) 277 F.Supp. 649, 652 [plaintiff students should be permitted to hear the evidence, and they (not their attorney) may question at the hearing any witness who gives evidence against them]; *Buttny* v. *Smiley* (D.Colo. 1968) 281 F.Supp. 280, 288 [noting, without apparent comment, that university students were afforded an opportunity to cross-examine the witnesses who appeared against them, except one whose affidavit was admitted into the record]; *Mills* v. *Board of Education of District of Columbia* (D.D.C. 1972) 348 F.Supp. 866, 882-883 [confrontation and cross-examination must be afforded in school expulsion proceedings].)

Other federal cases clearly support my point of view. (See, e.g., *Boykins* v. *Fairfield Board of Education* (5th Cir. 1974) 492 F.2d 697, 701-702 [declining to require universal confrontation and cross-examination of witnesses, and finding sufficient "a right to confront and cross-examine such adverse witnesses as appear, without the technical strictures upon their testimony of the hearsay rule"]; *Whiteside* v. *Kay* (W.D.La. 1978) 446 F.Supp. 716, 720 ["The cost and administrative burden on schools to hold full-scale hearings with compulsory process, cross-examination and discovery prior to expelling students for the remainder of the school year would greatly surpass the risk of error embodied in the Louisiana expulsion procedure"].)

The foregoing list of federal authorities is not exhaustive; litigation by pupils against their schools has proliferated and burdened the courts in recent years. I am satisfied, however, that neither the foregoing cases nor *Goss* foreshadow or compel a result different from that I would reach here.

No California cases have dealt squarely with the constitutionality of the procedures set up by section 48914. One local federal decision, however, discussed the forerunner to this statute. In *Gonzales* v. *McEuen* (C.D.Cal. 1977) *supra,* 435 F.Supp. 460, 467, the court declared that *Goss* "clearly anticipates that where the student is faced with the severe penalty of expulsion he shall have the right to be represented by and through counsel, to present evidence on his own behalf, and to confront and cross-examine adverse witnesses." More significantly, the court announced that "where the student is faced with the severe sanction of expulsion, due process does not permit admission of *ex parte* evidence given by witnesses not under oath, and not subject to examination by the accused student." (*Id.,* at p. 469.) (Italics in original.) I note, however, that in *Gonzales* the school board's own rules provided that hearsay evidence "cannot be the sole basis for decision." (*Ibid.*) Moreover, absent the hearsay statements introduced in that case, there was "scant evidence" that the student in question was responsible for any wrongdoing. (*Ibid.*) Finally, the *Gonzales* opinion appears internally inconsistent; with regard to another student, the court pointed out that the prosecution was not obligated to call any witnesses, since even in criminal cases "a defendant has no right to confront a 'witness' who provides no evidence at trial. Nor, is the government required to call all of the witnesses to a crime. [Citation.] The failure of the District to call essential witnesses may, however, have a direct bearing on whether it can sustain its burden of proof based upon competent, credible evidence." (*Id.,* at p. 468.)

I read *Gonzales* to hold only that failure to call percipient witnesses to an incident may affect the weight to be accorded their written declarations or hearsay statements. To the extent the federal district court opinion in *Gonzales* may hold that no ex parte evidence given by witnesses not under oath and not subject to cross-examination is permitted by due process, it goes beyond the re-

quirements of section 48914 and I do not find its rationale persuasive, for the reasons already set forth.

Finally, I do not read Education Code section 48914 as requiring confrontation and cross-examination in a school setting, even where discipline as severe as expulsion is contemplated. It must be remembered that there was no expulsion in this case, merely suspension for the balance of the school term with an opportunity upon counseling to shorten even that brief suspension.

The code section upon which the petitioner relies describes in subdivision (b) thereof the written notice to be forwarded to the pupil and his parent; it does not purport to grant specific rights. The notice must advise the pupil and his parent that he may be represented at the forthcoming hearing, that he may confront and question *witnesses who testify at the hearing*—there were none here—that he may question all other evidence presented—the written statements in this instance—and that he may present oral and documentary evidence, including witnesses of his own. He presented only his own testimony. No other evidence was offered, although the pupil had a full opportunity at the hearing to do so.

Therefore, under these circumstances I cannot agree with the majority that this limited suspension violated any of the pupil's rights.

As a policy matter, I am concerned with the effect of the majority opinion on the ability of public schools to maintain decorum and to impose discipline upon incorrigible students involved in assaultive behavior, individual and group conflict, vandalism and other serious disruptions of the school function.

As noted by the appellants, more than 30 school administrators filed with the trial court declarations that a mandatory confrontation rule would result in a severe loss of discipline and control in our public schools. They reported as their collective experience that student witnesses are fearful of face-to-face confrontation, particularly in circumstances where racial strife and physical violence are involved.

The declarations in the trial court indicated most students will refuse to appear as witnesses or their parents will not permit them to appear because of a genuine fear of retaliation. The schools have no power of subpoena. But most students who decline to attend the hearing will sign statements. Even though the statements reveal the identity of the witness, the risk of reprisal is reduced; often a name means little, but the face of a witness is not easily forgotten.

The district involved in this case holds approximately 300 expulsion hearings per year, all of which are conducted by a 3-member lay panel. As the record in this case reveals, the hearings are essentially an informal proceeding through

which the panel seeks to learn the truth, certainly not an adversary hearing in the criminal trial sense.

If a confrontation and cross-examination rule is to be imposed, the nature of the hearing will be drastically changed. The proceedings will not only be significantly lengthened, but the school administration may ultimately be compelled to hire lawyers to conduct hearings and other lawyers to serve as prosecutors. The accused pupil already has the right to counsel. Our public schools will be transformed into minicourthouses. I find that result highly undesirable in what should be a reflective academic environment.

I would affirm the judgment.

Richardson, J., concurred.