Filed 7/22/22

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| ANN LEENAY, | |
| Petitioner, | E077292 |
| v. | (Super.Ct.No. JCC5110) |
| THE SUPERIOR COURT OF SAN BERNARDINO COUNTY, | OPINION |
| Respondent; | |
| LOWE'S HOME CENTERS, LLC, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS; petition for writ of mandate. David S. Cohn, Judge. Petition granted.

The Graves Firm, Allen Graves and Jacqueline S. Treu for Petitioner.

No appearance for Respondent.

Gibson, Dunn & Crutcher, Katherine V.A. Smith, Michele L. Maryott, Katie M. Magallanes and Bradley J. Hamburger for Real Party in Interest.

Section 1281.4 of the Code of Civil Procedure requires a court to stay an action pending arbitration "of a controversy which is an issue involved" in the action.

1

(Unlabeled statutory citations refer to the Code of Civil Procedure.) In this writ proceeding, we must decide what the statute means. Specifically, does it authorize the court to stay a plaintiff's action on the basis of a pending arbitration to which the plaintiff is not a party?

Ann Leenay brought an action against her former employer, Lowe's Home Centers, LLC (Lowe's), under the Private Attorneys General Act of 2004 (PAGA). (Lab. Code, § 2698 et seq.) The trial court granted a petition to coordinate her action with a number of other PAGA actions against Lowe's. Lowe's then moved to stay the coordinated actions under section 1281.4. Lowe's based the motion on over 50 arbitration proceedings against it, but Leenay and the other plaintiffs in the coordinated actions are not parties in any of those arbitration proceedings. The trial court granted the motion to stay, and Leenay filed a petition for writ of mandate asking us to vacate the order.

We conclude that the trial court erred by granting the motion to stay. Section 1281.4 does not authorize the court to stay a plaintiff's action on the basis of a pending arbitration to which the plaintiff is not a party. Rather, section 1281.4 applies only when a court has ordered parties to arbitration, the arbitrable issue arises in the pending court action, and the parties in the arbitration are also parties to the court action. Under those circumstances, the court must stay the action (or enter a stay with respect to the arbitrable issue, if the issue is severable). (§ 1281.4.) Those circumstances do not exist in this case. We therefore grant Leenay's writ petition.

2

BACKGROUND

## I. *Leenay's Complaint*

In September 2019, Leenay filed her PAGA complaint against Lowe's in Los Angeles County Superior Court. She brought the lawsuit on behalf of current and former commissioned employees of Lowe's, alleging that Lowe's miscalculated the employees' premium pay when compensating them for missed meal periods and overtime hours. More specifically, she alleged that (1) Lowe's failed to include employees' sales commissions when calculating their regular rate of compensation for missed meal period premiums, and (2) Lowe's used an erroneous formula for calculating the commission component of the overtime premium. Leenay further alleged that the commissioned employees' wage statements did not disclose information necessary to determine how Lowe's was calculating the overtime premium. In addition, she alleged that Lowe's failed to provide timely and uninterrupted meal periods for commissioned employees.

On the basis of the foregoing allegations, Leenay alleged causes of action for failure to pay overtime wages (Lab. Code, § 510), failure to provide meal periods (Lab. Code, §§ 226.7, subd. (b), 512), failure to pay missed meal period premiums (Lab. Code, § 226.7, subd. (c)), failure to timely pay wages (Lab. Code, § 204), failure to pay wages due upon discharge or resignation (Lab. Code, §§ 201, 202), and failure to provide accurate itemized wage statements (Lab. Code, § 226, subd. (a)).

## II. *The Petition for Coordination*

In May 2020, the plaintiffs in *Ceniceros, et al. v. Lowe's Home Centers, LLC* (*Ceniceros*) (San Diego Super. Ct. No. 37-2020-00010047-CU-OE-CTL) submitted a

petition for coordination of eight PAGA actions against Lowe's. The *Ceniceros* plaintiffs sought to coordinate their own action, Leenay's action, and six other actions pending across the state. They asserted that the eight PAGA actions involved parallel, though not identical, claims regarding the alleged unlawful practices of Lowe's, including failure to provide meal or rest periods, failure to pay all wages or overtime wages, failure to provide accurate itemized wage statements, and unlawful deductions from wages. The *Ceniceros* plaintiffs argued that coordination would prevent costly and duplicative discovery and potentially inconsistent rulings. Leenay opposed the petition for coordination, arguing that her action was not factually or legally similar to the other actions in the coordination petition.

The petition was assigned to a coordination motion judge in San Bernardino County Superior Court. In August 2020, the court granted the petition in part and denied it in part. The court ruled that six of the eight actions, including Leenay's action, should be coordinated.[1] The coordinated actions were assigned to the same court that ruled on the petition for coordination.

---

[1] In addition to Leenay's action and the *Ceniceros* action, the court ordered the following actions coordinated: *Morales v. Lowe's Home Centers, LLC* (San Bernardino Super. Ct. No. CIVDS1827964); *Kalivas v. Lowe's Home Centers, LLC* (San Diego Super. Ct. No. 37-2019-00001954); *Ayala v. Lowe's Home Centers, LLC* (Ventura Super. Ct. No. 56-2018-00521531-CU-OE-VTA); and *Alvarado v. Lowe's Home Centers, LLC* (San Mateo Super. Ct. No. 18CIV05927). At some later date, the court added two more cases to the group of coordinated actions: *Andrade v. Lowe's Home Centers, LLC* (San Diego Super. Ct. No. 37-2020-00022729-CU-OE-CTL) and *Jenkins v. Lowe's Home Centers, LLC* (Monterey Super. Ct. No. 20CV002277).

III. *The Motion to Stay the Coordinated Actions*

In March 2021, Lowe's moved to stay the coordinated PAGA actions pending resolution of over 50 arbitration proceedings against Lowe's. The arbitration claimants were current or former employees at various Lowe's locations in California, and they brought their claims on an individual basis. They alleged numerous wage and hour violations under the Labor Code, including failure to pay overtime wages, failure to pay minimum wages, failure to provide meal and rest periods, failure to reimburse for required expenses, failure to provide accurate itemized wage statements, and failure to pay wages due upon discharge or resignation. The group of arbitration claimants did not include Leenay or any of the other plaintiffs in the coordinated actions.

Lowe's argued that section 1281.4 mandated a stay of the coordinated actions. According to Lowe's, the arbitrations and the coordinated actions involved overlapping legal and factual issues, because the coordinated actions and the arbitration demands alleged many of the same Labor Code violations, and the plaintiffs in the coordinated actions sought to recover PAGA penalties on behalf of aggrieved employees, including the arbitration claimants. Lowe's argued that a stay of the coordinated actions was necessary to preserve the jurisdiction of the arbitrator and protect against inconsistent determinations by the court and arbitrator.

Leenay opposed the motion to stay. She argued that section 1281.4 did not authorize the court to stay a case when a third party litigant in a separate case had been ordered to arbitration. She further argued that her action and the arbitrations did not involve overlapping issues—none of the arbitration demands alleged the miscalculation

5

of commissioned employees' premium pay—so there was no risk of inconsistent rulings. At oral argument, Leenay also argued that granting the motion would effect a perpetual stay of the coordinated PAGA actions, because a large employer like Lowe's, which required employees to sign arbitration agreements, would always be defending arbitrations alleging wage and hour violations.

In April 2021, the trial court granted the motion to stay all the coordinated actions. The court acknowledged that the arbitration claimants were not plaintiffs in the coordinated actions. But the court ruled that section 1281.4 "focuses on the *issue* rather than the *parties*," and the statute does not specify "that any of the parties subject to arbitration must also be parties to the litigation." The court concluded that the arbitration claimants were in the group of aggrieved employees that the plaintiffs sought to represent in their PAGA actions, and the proceedings would present the same issues—whether Lowe's violated provisions of the Labor Code. The court determined that section 1281.4 mandated a stay under those circumstances.

The court noted the perpetual stay issue identified by Leenay, describing the issue as "[t]he best argument against a stay." But the court nevertheless rejected the argument and concluded that the coordinated actions should be stayed pending the outcome of the 50-plus arbitrations. The court reasoned that once those arbitrations are resolved, the court and the parties can determine whether Leenay's concern about perpetual arbitrations is "real." The court set a status conference for January 31, 2022, to assess the status of the arbitrations and determine whether the court should continue or lift the stay.

6

Leenay petitioned this court for a writ of mandate directing the trial court to vacate its order granting the motion to stay. We issued an order to show cause why the requested relief should not be granted.

STANDARD OF REVIEW

Ordinarily, we review a trial court's decision to stay an action pending arbitration for abuse of discretion. (*Jarboe v. Hanlees Auto Group* (2020) 53 Cal.App.5th 539, 547 (*Jarboe*).) But when, as here, the court's decision rests on the interpretation of a statute and its application to undisputed facts, the case presents a question of law that we review de novo. (*Cal-Western Business Services, Inc. v. Corning Capital Group* (2013) 221 Cal.App.4th 304, 309.)

DISCUSSION

Leenay argues that the court erred by staying the coordinated actions. We agree. The plaintiffs in the coordinated actions are not parties to the arbitrations. Section 1281.4 does not authorize the court to stay an action on the basis of an arbitration to which the plaintiff is not a party.

In interpreting section 1281.4, our goal "'is to determine the Legislature's intent so as to effectuate the law's purpose.' [Citation.] 'We begin by examining the statutory language, giving it a plain and commonsense meaning. [Citation.] We do not, however, consider the statutory language in isolation . . . .'" (*Skidgel v. California Unemployment Ins. Appeals Bd.* (2021) 12 Cal.5th 1, 14.) Instead, we must harmonize the various parts of a statutory scheme "'by considering them in the context of the statutory [framework] as a whole. [Citation.] If the statutory language is unambiguous, then its plain meaning

7

controls. If, however, the language supports more than one reasonable construction, then we may look to extrinsic aids, including the ostensible objects to be achieved and the legislative history.'" (*Ibid.*)

I. *The Language of the Statutory Scheme*

Section 1281.4 is part of the California Arbitration Act (CAA) (§ 1280 et seq.), "'a comprehensive statutory scheme regulating private arbitration in this state.'" (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 380.) Section 1281.4 states: "If a court of competent jurisdiction, whether in this State or not, has ordered arbitration of a controversy which is an issue involved in an action or proceeding pending before a court of this State, the court in which such action or proceeding is pending shall, upon motion of a party to such action or proceeding, stay the action or proceeding until an arbitration is had in accordance with the order to arbitrate or until such earlier time as the court specifies." (§ 1281.4.) "If the issue which is the controversy subject to arbitration is severable, the stay may be with respect to that issue only." (*Ibid.*)

"Controversy" is a defined term under the CAA. Under section 1280, subdivision (d), it "means any question arising between parties to an agreement whether the question is one of law or of fact or both." The CAA is concerned with agreements to arbitrate in particular. (See, e.g., §§ 1281 ["A written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and revocable . . ."], 1281.2 [authorizing an order to arbitrate when there is "a written agreement to arbitrate a controversy and . . . a party to the agreement refuses to arbitrate that controversy"].) For purposes of the CAA, an "'[a]greement' includes, but is not limited to, agreements

8

providing for valuations, appraisals, and similar proceedings and agreements between employers and employees or between their respective representatives." (§ 1280, subd. (a).) The act thus provides a nonexclusive list of the types of agreements that may contain arbitration provisions and fall within the act's scope.

Incorporating the statutory definition of controversy, section 1281.4 means that if (1) a court has ordered arbitration of a question arising between parties to an agreement, and (2) the same question arises between those parties in a pending action, then (3) the court "shall" stay the action (or enter a stay with respect to the arbitrable issue, if the issue is severable). (§ 1281.4.) In other words, section 1281.4 requires that the pending action involve both the arbitrable question and the parties in the arbitration. The plain language of sections 1281.4 and 1280, subdivision (d), compels this conclusion.

The trial court here ruled that section 1281.4 "focuses on the *issue* rather than the *parties*," and the statute does not specify "that any of the parties subject to arbitration must also be parties to the litigation." But the principle that the parties to the arbitration must be parties in the pending action inheres in the statutory definition of controversy. The "controversy which is an issue" (§ 1281.4) in the action cannot be untethered from the "parties to an agreement" (§ 1280, subd. (d)) who have been ordered to arbitration.

Lowe's argues that the plain language of section 1281.4 requires (1) an overlapping question of law or fact between the arbitration and the court action and (2) only one party in common between both proceedings. But nothing in the statutory language supports that interpretation. By definition, a controversy arises between the

9

parties to an agreement—not one party to it and a stranger to the agreement. Both parties who have agreed to arbitrate the controversy must be parties in the pending court action.

Another section of the CAA, section 1281.2, addresses litigation with a third party that raises "common issue[s] of law or fact." (§ 1281.2, subd. (c).) That section governs the court's authority when ruling on a petition to compel arbitration. If the court finds that a valid arbitration agreement exists, it shall order the parties to arbitrate the controversy, unless it determines that an exception applies. (§ 1281.2, subds. (a)-(d).) One of the exceptions applies when "[a] party to the arbitration agreement is also a party to a pending court action or special proceeding with a third party, arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact." (§ 1281.2, subd. (c).) In that case, the court has the discretion to (1) refuse to enforce the arbitration agreement and order intervention or joinder of all parties in a single action; (2) order intervention or joinder as to some or all issues; (3) order arbitration among the parties to the arbitration agreement and stay the pending court action with third parties; or (4) stay the arbitration pending the outcome of the court action. (§ 1281.2, last par.)

Section 1281.2 does not speak of a "controversy" with respect to third parties for good reason: The Legislature reserved that term for disputes between the parties to an agreement (namely, an arbitration agreement). The statute does not, for instance, describe the third party litigation as "involving the controversy." Instead, section 1281.2 describes the third party litigation as "arising out of the same transaction or series of related transactions." (§ 1281.2, subd. (c).) By choosing materially different language to

10

describe litigation with third parties, the Legislature signaled its intent that section 1281.4 apply to pending actions between parties to an arbitration agreement. (*People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.* (2005) 37 Cal.4th 707, 717 ["'When the Legislature uses materially different language in statutory provisions addressing the same subject or related subjects, the normal inference is that the Legislature intended a difference in meaning'"].)

To summarize, the plain language of section 1281.4 must be read in conjunction with the CAA's definition of a controversy. Reading the two together, section 1281.4 authorizes a stay only if a court has ordered arbitration of a question between the parties to an agreement, and the same question and the same parties are involved in the pending action. Section 1281.4 is not reasonably susceptible to the trial court's interpretation or the one urged by Lowe's.

II. *Legislative History*

Even if section 1281.4 were reasonably susceptible to multiple interpretations, the legislative history would clarify that our interpretation is the correct one. The legislative history establishes that the Legislature intended section 1281.4 to apply when the pending action involves the parties to an arbitration agreement and an arbitrable question arising between them.

Our state's first "modern" arbitration statutes date back to 1927. (*Keating v. Superior Court* (1982) 31 Cal.3d 584, 601, overruled on other grounds by *Southland Corp. v. Keating* (1984) 465 U.S. 1, 16-17; Stats. 1927, ch. 225, §§ 1-14, pp. 403-408.) The 1927 act included former section 1282, which authorized a petition to compel

11

arbitration, and former section 1284, which "provide[d] for a stay of suit pending arbitration." (*Sjoberg v. Hastorf* (1948) 33 Cal.2d 116, 117; Stats. 1927, ch. 225, §§ 3, 5, pp. 404-405.) The 1927 act did not include a definition of "controversy," "agreement," or any other term used in the act. (Stats. 1927, ch. 225, §§ 1-14, pp. 403-408.) But the act repeatedly used "controversy" to describe disputes that arose between parties to an arbitration agreement. (E.g., former § 1280, added by Stats. 1927, ch. 225, § 1, p. 404 ["an agreement in writing to submit an existing controversy to arbitration . . . shall be valid, enforceable, and irrevocable"]; former § 1281, added by Stats. 1927, ch. 225, § 2, p. 404 ["Two or more persons may submit in writing to arbitration any controversy existing between them at the time of the agreement to submit"]; former § 1286, added by Stats. 1927, ch. 225, § 7, p. 406 ["any arbitration had under authority of an arbitration clause in any contract, shall be held within the State of California, unless all parties to such contract, after the controversy arises, agree in writing that the arbitration be held elsewhere"].)

Section 1281.4 is derived from former section 1284. (*Charles J. Rounds Co. v. Joint Council of Teamsters* (1971) 4 Cal.3d 888, 895-898 (*Charles J. Rounds Co.*) [discussing how former section 1284 developed into section 1281.4]; Notes, Deering's Ann. Code Civ. Proc., foll. § 1281.4.) Former section 1284 stated in full: "If any suit or proceeding be brought upon any issue arising out of an agreement providing for the arbitration thereof, the court in which such suit or proceeding is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration, shall stay the action until an arbitration has been had in accordance with the terms of the

12

agreement; *provided*, that the applicant for the stay is not in default in proceeding with such arbitration." (Stats. 1927, ch. 225, § 5, p. 405 (italics in original); *Clogston v. Schiff-Lang Co.* (1935) 2 Cal.2d 414, 415.)

Former section 1284 governed stays pending arbitration until the 1960's, when the Legislature revised the arbitration statutes and enacted the CAA. (Stats. 1961, ch. 461, §§ 1-8, pp. 1540-1552; *Aguilar v. Lerner* (2004) 32 Cal.4th 974, 985.) Before the CAA's enactment, the Legislature "authorized the California Law Revision Commission to study and determine whether the statutory arbitration scheme should be revised." (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 24; Recommendation and Study Relating to Arbitration (Dec. 1960) 3 Cal. Law Revision Com. Rep. (1961) p. G-1 (Arbitration Study).)

The commission submitted its report to the Legislature in December 1960. (Arbitration Study, *supra*, 3 Cal. Law Revision Com. Rep. at p. G-1.) The Law Revision Commission drafted section 1281.4, and the Legislature enacted it without change. The report of the commission therefore "is entitled to substantial weight in construing the statute." (*Gaines v. Fidelity National Title Ins. Co.* (2016) 62 Cal.4th 1081, 1096, fn. 6; see also *Rojas v. Superior Court* (2004) 33 Cal.4th 407, 418-422 [considering the Law Revision Commission's report in examining the legislative history of a statute]; *Hale v. Southern Cal. IPA Medical Group, Inc.* (2001) 86 Cal.App.4th 919, 927 ["reports and interpretive opinions of the Law Revision Commission are entitled to great weight"].)

The Law Revision Commission's report discussed a number of issues with the then-existing arbitration scheme. One of the commission's concerns related to former

section 1284.  (Arbitration Study, *supra*, 3 Cal. Law Revision Com. Rep. at p. G-39.) Under the heading, "Enforcement of Arbitration Agreements," the commission's report observed that the statutory scheme "should include remedies designed to frustrate the breach of [arbitration] agreements and to provide relief for the nonbreaching party."  (*Id.* at p. G-35, boldface and capitalization omitted.)  The report characterized the stay authorized by former section 1284 as one of those remedies.  (*Id.* at p. G-36.)  The commission observed that, under former section 1284, "[w]hen a party requests a stay in a civil action on the basis of an agreement to arbitrate, he is using that agreement to arbitrate as a defense."  (*Id.* at p. G-39.)  But former section 1284 "provide[d] for a stay of judicial proceedings merely upon a showing that the parties have agreed to arbitrate the matter involved" (*id.* at p. G-7), and there was no provision compelling the parties to arbitrate even though the action was stayed.  (*Id.* at p. G-39.)

The commission reasoned that if a party were going to seek a stay of judicial proceedings on the basis of an arbitration agreement, that party "should show his [or her] willingness to proceed with the arbitration as the means of settling the dispute," and "[t]he best way for the defendant to demonstrate this willingness is to obtain an order to compel arbitration."  (Arbitration Study, *supra*, 3 Cal. Law Revision Com. Rep. at p. G-39.)  It therefore recommended that the revised arbitration statutes require "the initiation of a proceeding to compel arbitration under the agreement" as "a condition precedent for the granting of a stay."  (*Ibid.*)  The commission explained that such a revision would clarify the test for determining whether the moving party had "default[ed]" on the agreement to arbitrate.  (*Ibid.*; see former § 1284, Stats. 1927, ch. 225, § 5, p. 405 [the

14

court shall stay the pending action if "the applicant for the stay is not in default in proceeding with" the arbitration].)

The commission consequently drafted and proposed section 1281.4. (Arbitration Study, *supra*, 3 Cal. Law Revision Com. Rep. at pp. G-11, G-13.) The proposed statute required a showing that (1) "a court of competent jurisdiction, whether in this State or not, has ordered arbitration of [the] controversy" or (2) "an application has been made to a court of competent jurisdiction, whether in this State or not, for an order to arbitrate [the] controversy." (*Id.* at p. G-13.) The Legislature enacted the commission's proposed statute verbatim, and the Legislature has not amended section 1281.4 since then.[2] (§ 1281.4, added by Stats. 1961, ch. 461, § 2, pp. 1541-1542.)

The commission also drafted and proposed section 1280, including the subdivisions defining "controversy" and "agreement." (Arbitration Study, *supra*, 3 Cal. Law Revision Com. Rep. at pp. G-11 to G-12.) Regarding the definition of controversy, the report observed that California case law treated both questions of law and questions of fact as arbitrable, whereas other jurisdictions permitted parties to submit questions of law to a court before completing arbitration. (*Id.* at pp. G-31 to G-32.) The commission recommended codifying California case law on this point "in the interest of clarity." (*Id.* at p. G-32; see also *id.* at p. G-63 [recommending the codification of case law "so as

---

[2] The new section 1284 proposed by the commission and enacted by the Legislature was unrelated to stays of judicial proceedings. (Arbitration Study, *supra*, 3 Cal. Law Revision Com. Rep. at pp. G-11, G-15 to G-16; Stats. 1961, ch. 461, § 2, pp. 1544-1545.) It concerned applications to correct an arbitrator's award. (§ 1284, added by Stats. 1961, ch. 461, § 2, pp. 1544-1545.)

15

to provide expressly" that "[q]uestions of both law and fact are within the arbitration statute"].)  It thus proposed to define controversy as "any question arising between parties to an agreement whether such question is one of law or of fact or both."  (*Id.* at p. G-12.)

As to the definition of agreement, the commission observed that California courts had historically excluded appraisal and valuation proceedings from the scope of the arbitration statutes.  (Arbitration Study, *supra*, 3 Cal. Law Revision Com. Rep. at p. G-34.)  The report recommended that the Legislature expressly extend the statutes' scope to appraisal and valuation proceedings.  (*Id.* at pp. G-35, G-63.)  It also recommended that the Legislature eliminate an existing statutory exclusion for "'contracts pertaining to labor'" (*id.* at p. G-32) and codify case law holding that "labor-management arbitration agreements" fell within the scope of the arbitration statutes.  (*Id.* at p. G-34.)  The commission therefore proposed adding the following definition:  "'Agreement' includes but is not limited to agreements providing for valuations, appraisals and similar proceedings and agreements between employers and employees or between their respective representatives."  (*Id.* at p. G-12.)

Like section 1281.4, the Legislature enacted the commission's proposed section 1280 without change.  (Stats. 1961, ch. 461, § 2, p. 1540; Arbitration Study, *supra*, 3 Cal. Law Revision Com. Rep. at p. G-12.)  Since then, the Legislature has made only minor, nonsubstantive changes to the provisions defining controversy and agreement.  (Stats. 2019, ch. 870, § 2.)

The foregoing legislative history demonstrates three things.  First, former section 1284 enforced arbitration agreements by providing a remedy when a party had

16

filed suit on arbitrable issues and thus breached an arbitration agreement. The statute mandated a stay when the pending lawsuit was "brought upon any issue arising out of an [arbitration] agreement," and the court was "satisfied" that the issue was "referable to arbitration." (Stats. 1927, ch. 225, § 5, p. 405.) The Law Revision Commission recognized the remedial purpose of former section 1284, and our Supreme Court has as well. In *Charles J. Rounds Co.*, the court discussed cases in which the defendants had asserted the failure to pursue contractual arbitration as an affirmative defense. (*Charles J. Rounds Co.*, *supra*, 4 Cal.3d at pp. 894-895.) The trial courts in those cases had entered judgment for the defendants or dismissed the actions on the basis of the arbitration defense. (*Ibid.*) The high court then characterized former section 1284 as "[a]n alternative remedy for failure to arbitrate." (*Charles J. Rounds Co.*, at p. 895.) It noted that the statute "was utilized primarily where plaintiff's suit involved some issues that were not covered by or susceptible to arbitration. In such cases the entire case would not be dismissed for failure to arbitrate." (*Ibid.*) Instead, under former section 1284, the trial court could stay the case pending arbitration of the arbitrable issues between the parties. (*Charles J. Rounds Co.*, at pp. 895-896.) But former section 1284 was just as applicable when the action involved arbitrable issues only—the defendant could choose to seek a stay rather than assert the failure to arbitrate as an affirmative defense. (*Charles J. Rounds Co.*, at p. 896.) Former section 1284's function as a remedy for breach of an arbitration agreement thus was clear.

Second, when the Law Revision Commission proposed section 1281.4 to replace former section 1284, there was no indication in the commission's report that the

17

replacement statute was meant to take on a different purpose. That is, the replacement statute would continue to enforce arbitration agreements by providing a remedy for the failure to arbitrate. Indeed, the commission discussed and recommended only one substantive change to former section 1284: Require a showing that a court had ordered the parties to arbitrate or that an application for such an order was pending. That recommendation (and the Legislature's adoption of it) did not change the purpose of the statute. It made the statue a more effective tool to enforce arbitration agreements and cure breaches of them. (See *MKJA, Inc. v. 123 Fit Franchising, LLC* (2011) 191 Cal.App.4th 643, 660 [a stay under § 1281.4 "is essential to the enforceability of an arbitration agreement since, in the absence of such a stay, a party could simply litigate claims that it had agreed to arbitrate"].)

Third, even before the CAA, the statutory scheme used the term "controversy" to describe disputes between parties to an arbitration agreement. And when the Law Revision Commission proposed the definitions of controversy and agreement, the new definitions were not intended to change that meaning. The commission merely intended (1) to clarify that any type of question, whether legal or factual, was arbitrable and (2) to broaden the range of agreements that would be treated as enforceable arbitration agreements.

Accordingly, the legislative history establishes that section 1281.4 was meant to remedy a party's failure to arbitrate. A stay of an action brought by a party who has not agreed to arbitrate his or her claims does not achieve that goal. The facts of this case illustrate the point. Lowe's does not argue that the coordinated actions are subject to

18

arbitration. Indeed, an employer cannot compel an employee to arbitrate a PAGA action on the basis of a predispute arbitration agreement. (*Collie v. The Icee Co.* (2020) 52 Cal.App.5th 477, 480.) Staying the coordinated actions consequently does not enforce any arbitration agreements between the plaintiffs and Lowe's or remedy any breach of such agreements.

For these reasons, the legislative history of section 1281.4 establishes that the Legislature wanted the statute to apply to actions that raise arbitrable claims between parties to an arbitration agreement. Along with an order to arbitrate, the stay remedies a breach of an arbitration agreement and promotes enforcement of it. That is consistent with our interpretation of the plain language of sections 1281.4 and 1280, subdivision (d).

III. *Application to the Motion to Stay*

In this case, the trial court erred by granting the motion to stay under section 1281.4. That section applies if a court has ordered arbitration of a question arising between parties to an agreement, and that question and those parties are involved in the present action. But Lowe's presented no evidence that a court has ordered Leenay or the other plaintiffs in the coordinated actions to arbitrate a question that arises in those actions. Leenay and the other plaintiffs are not among the arbitration claimants who have brought arbitration demands against Lowe's. Nor did Lowe's offer any evidence that a court has ordered the state—in whose shoes Leenay and the other PAGA plaintiffs stand—to arbitrate a question arising in the coordinated actions. (*Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 87 (*Kim*) ["Plaintiffs may bring a

19

PAGA claim *only* as the state's designated proxy"].) It follows that section 1281.4 has no application here.

Moreover, it does not matter whether the arbitration claimants qualify as "'aggrieved employee[s]'" in the coordinated PAGA actions. (Lab. Code, § 2699, subd. (c).) Aggrieved employees are nonparties in PAGA actions. (*Arias v. Superior Court* (2009) 46 Cal.4th 969, 986.) Section 1281.4 does not authorize a stay based on a nonparty's arbitration claim.

The case law on which Lowe's relies does not compel a different conclusion. In one of the cases, *Franco v. Arakelian Enterprises, Inc.* (2015) 234 Cal.App.4th 947 , the plaintiff was bound by an arbitration agreement with the sole defendant, her employer. (*Id.* at p. 952.) The court compelled the parties to arbitration on most of the claims and stayed the nonarbitrable PAGA claim. (*Id.* at pp. 965-966.) Lowe's contends that *Franco* is "directly on point," but the case is materially distinguishable. The *Franco* stay was based on an arbitration between the plaintiff and the defendant in the pending action. Again, no court has ordered Leenay and the other plaintiffs in the coordinated actions to arbitrate their claims with Lowe's, and the plaintiffs have no pending arbitrations with Lowe's.

The other cases on which Lowe's relies are similarly inapposite. In those cases, the plaintiffs were bound by an arbitration agreement with at least one defendant, but the plaintiffs had combined their arbitrable claims with claims against third parties. The courts compelled the plaintiffs to arbitration on the arbitrable claims and stayed their nonarbitrable claims against the third parties. (*Heritage Provider Network, Inc. v.*

20

*Superior Court* (2008) 158 Cal.App.4th 1146, 1148-1149, 1151; *Federal Ins. Co. v. Superior Court* (1998) 60 Cal.App.4th 1370, 1372, 1375 (*Federal Ins. Co.*); *Marcus v. Superior Court* (1977) 75 Cal.App.3d 204, 207-208; *Cook v. Superior Court of Los Angeles County* (1966) 240 Cal.App.2d 880, 884-885.)  Thus, while the judicial proceedings included defendants who were not parties to the arbitration, the stays nevertheless were based on arbitrations between the plaintiffs and at least one defendant.

None of those cases assists Lowe's.  In each of those cases, both of the parties in the underlying arbitration were parties in the judicial proceedings, and they had agreed to arbitrate a question that arose in the judicial proceedings.  That is what section 1281.4 requires.  None of the cases held that an arbitration proceeding may be used to stay an action brought by a plaintiff who is not a party to the arbitration.  None of the cases even considered that proposition, so they are not authority for it.  (*Mercury Ins. Group v. Superior Court* (1998) 19 Cal.4th 332, 348 ["A decision, of course, is not authority for what it does not consider"]; *Ginns v. Savage* (1964) 61 Cal.2d 520, 524, fn. 2 ["Language used in any opinion is of course to be understood in the light of the facts and the issue then before the court, and an opinion is not authority for a proposition not therein considered"].)

Finally, we note that the correct interpretation of section 1281.4 resolves the perpetual stay problem identified by Leenay.  Under the erroneous interpretation of the statute urged by Lowe's, it would be entitled to stay Leenay's action any time a nonparty to that action files an arbitration claim alleging Labor Code violations by Lowe's, whether the stay lasts "until an arbitration is had . . . or until such earlier time as the court

21

specifies." (§ 1281.4.) Such a result would repeatedly and indefinitely delay Leenay's action. But under a correct interpretation of section 1281.4, the trial court is not authorized to stay her action on the basis of a nonparty's arbitration claim. That is the rule for all actions, but it is important particularly in PAGA actions, which are law enforcement actions on behalf of the state. (*Kim*, *supra*, 9 Cal.5th at p. 86 ["a PAGA claim is an enforcement action . . . , with the PAGA plaintiff acting on behalf of the government"].) When an employee chooses to forgo individual claims and brings a PAGA action on behalf of the state, the "employer should not be able [to] dictate how . . . the representative action proceeds" by capitalizing on another employee's decision to bring arbitrable claims. (*Jarboe*, *supra*, 53 Cal.App.5th at p. 557.) That result would create an unwarranted obstacle to "'the effective prosecution of representative PAGA actions'" and undermine the Legislature's objective to "'augment the limited enforcement capability'" of the state. (*Kim*, at pp. 87, 86.)

For all of these reasons, we conclude that the court erred by granting the motion to stay the coordinated actions. Section 1281.4 does not authorize a stay based on a nonparty's arbitration claim.[3]

---

[3]    In its motion to stay, Lowe's argued that apart from section 1281.4, the court had discretion to stay the coordinated actions under the court's "inherent authority to promote judicial efficiency and comity." The trial court noted that argument, but it did not otherwise discuss the argument in its ruling. Lowe's does not argue that we should uphold the court's ruling on this alternative ground. In any event, the alternative argument lacks merit. As to judicial efficiency, the pertinent section of the motion cited only two cases in which courts had stayed an action pending arbitration. Those courts relied on section 1281.4 to stay the actions, not the courts' inherent authority to promote judicial efficiency. (*Federal Ins. Co.*, *supra*, 60 Cal.App.4th at pp. 1374-1375 [stayed

IV. *Motion to Dismiss the Writ Petition as Moot*

Lowe's filed a motion to dismiss Leenay's writ petition as moot, after the parties had fully briefed this matter and we issued our tentative opinion. According to Lowe's, the trial court has terminated the section 1281.4 stay, so Leenay has obtained the relief that she seeks from this court. Lowe's also filed a request for judicial notice in support of the motion to dismiss. We grant the request for judicial notice but deny the motion to dismiss.

Lowe's submitted documentation showing that in April 2022, the trial court held a hearing on a motion to lift the stay filed by Lowe's. The minute order states: "Motion to Lift Current Stay of Proceedings is granted. See the Court's written tentative ruling for specifics." The minute order further states that the court adopted the tentative ruling. The tentative ruling states: "If all fifty-four arbitrations are completed, the court will lift the stay . . . . If all the arbitrations are not completed, the court will order that the stay will be lifted automatically upon completion of all the arbitrations."

The reporter's transcript of the hearing discloses no express ruling granting the motion or lifting the stay. The court asked whether the parties had read the tentative

---

under section 1281.4]; *Coast Plaza Doctors Hospital v. Blue Cross of California* (2000) 83 Cal.App.4th 677, 693 [quoting *Federal Ins. Co.*, at p. 1375, as authority for the stay].)

As to comity, Lowe's argued that California courts have discretion to stay an action when an "an action already pending in a court of another jurisdiction" involves "the same parties and the same subject matter." (*Farmland Irrigation Co. v. Dopplmaier* (1957) 48 Cal.2d 208, 215.) For that argument, Lowe's relied on federal multidistrict litigation pending in the Western District of North Carolina. But the plaintiffs in the coordinated actions were not plaintiffs in the multidistrict litigation, and the multidistrict litigation did not allege any violations of California law.

ruling, and it heard argument. Lowe's informed the court that it had fully resolved 12 arbitrations and that the remaining 42 arbitrations were stayed pending finalization of a settlement. The majority of the discussion, however, involved case management issues; the court reserved hearing dates for various motions and ordered Lowe's to provide supplemental discovery responses.

The mootness doctrine permits an appellate court to dismiss proceedings if later events render it impossible for the appellate court to grant effective relief. (*Lockaway Storage v. County of Alameda* (2013) 216 Cal.App.4th 161, 174-175.) But '"[i]f an action involves a matter of continuing public interest and the issue is likely to recur, a court may exercise an inherent discretion to resolve that issue, even though an event occurring during its pendency would normally render the matter moot."' (*Morehart v. County of Santa Barbara* (1994) 7 Cal.4th 725, 746-747.) The public interest exception to the mootness doctrine is well-established. (*John A. v. San Bernardino City Unified School Dist.* (1982) 33 Cal.3d 301, 307.)

Here, Lowe's has not shown that the dispute between the parties is moot. The minute order adopts the tentative ruling, and the tentative ruling conditions the lifting of the stay on the completion of all 54 arbitrations. We have no confirmation that all 54 arbitrations have concluded. Consequently, the record before us still does not contain a court order lifting the section 1281.4 stay. And although the court and the parties appear to have proceeded on the assumption that the stay was lifted, the court's statements at the hearing do not permit us to interpret the court's written orders to mean something other than what they state.

24

Even if we had a court order lifting the stay, we would exercise our discretion to resolve the issues in this proceeding under the public interest exception. The proper interpretation of a statute presents a matter of public interest. (*Hamilton v. Town of Los Gatos* (1989) 213 Cal.App.3d 1050, 1054; *Schraer v. Berkeley Property Owners' Assn.* (1989) 207 Cal.App.3d 719, 728; *Darley v. Ward* (1982) 136 Cal.App.3d 614, 624.) Moreover, the issues in this case are likely to recur. The record shows that other courts have misinterpreted section 1281.4 in the same manner as the trial court here. In support of its motion to stay, Lowe's submitted orders entered by two departments of the San Francisco County Superior Court. Both orders applied section 1281.4 to stay actions on the basis of pending arbitrations to which the plaintiffs were not parties. And the issue could recur in this action if yet another employee files an arbitration claim against Lowe's alleging Labor Code violations. In short, this matter falls squarely within the public interest exception to the mootness doctrine.

## DISPOSITION

The request for judicial notice is granted. The motion to dismiss the petition for writ of mandate is denied. Let a peremptory writ of mandate issue directing the superior court to (1) vacate the order of April 23, 2021, granting the motion to stay the coordinated actions under section 1281.4, and (2) enter an order denying that motion. Leenay shall recover her costs incurred in this writ proceeding. (Cal. Rules of Court, rule 8.493(a)(1).)

Leenay shall prepare the peremptory writ of mandate, have the peremptory writ of mandate issued, serve copies on all of the parties, and file the original with the clerk of this court, together with proof of service on all parties.

CERTIFIED FOR PUBLICATION

MENETREZ
J.

We concur:

RAMIREZ
P. J.
SLOUGH
J.

26